927 P.2d 1379

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Craig WILLOUGHBY, Defendant–Appellant.**

**No. 16524.**

Intermediate Court of Appeals of Hawai'i.

Nov. 27, 1996.

We find no merit to Defendant's first three contentions. However, we agree that Defendant was improperly sentenced. Accordingly, we vacate that part of the Judgment which sentenced Defendant to pay restitution and remand this case to the circuit court, with instructions that it reconsider its sentence according to the guidelines set forth in this opinion.

Cheryl Rose Brawley (Alvin T. Sasaki, on the opening brief), Honolulu, for defendant-appellant.

James H. S. Choi, Deputy Prosecuting Attorney, City and County of Honolulu, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

Defendant–Appellant Craig Willoughby (Defendant) appeals from the September 23, 1992 Judgment of the First Circuit Court (Judgment), convicting and sentencing him for the offenses of reckless endangering in the second degree, a violation of Hawai'i Revised Statutes (HRS) § 707–714 (1993), and carrying a firearm on person without permit or license, a violation of HRS § 134–9 (1993).

Defendant contends that (1) the circuit court erroneously denied his November 14, 1991 motion to dismiss the indictment against him because his right under Hawai'i Rules of Penal Procedure (HRPP) Rule 48(b) to be tried within six months from "the date of arrest or filing of the charge, whichever is sooner" was violated; (2) his speedy trial right under both the federal and state constitutions was violated because he was tried over thirty-seven months after the indictment against him was filed; and (3) his right under the Interstate Agreement on Detainers (IAD), HRS chapter 834, to be tried within one hundred eighty (180) days of his request for final disposition of his Hawai'i charges, was violated. Defendant also contends that the circuit court erred when it sentenced him to pay restitution without first ascertaining whether he could afford to pay such amount.

## BACKGROUND

Within minutes of an incident on November 4, 1987 in which Charles Cox (Cox) suffered a gunshot wound to his jaw, Michael Dess and Defendant voluntarily appeared at the Kailua police station, presented police officers with a gun, and reported that they had been involved in the shooting of Cox. Both men were then arrested, charged with attempted murder, and held in police custody.

The next morning, after police detective Calvin Ohira had interviewed Defendant about the incident, Defendant was released pending further investigation. Several days later, Defendant left Hawai'i for San Diego, California, leaving no forwarding address. He later moved on to Sicklerville, New Jersey, where he remained at his parents' home for approximately two years.

On October 5, 1988, a grand jury indicted Defendant for second degree attempted murder, first degree assault, carrying a firearm without a permit or license, and second degree theft, all arising out of the November 4, 1987 incident. A bench warrant was issued the next day for Defendant's arrest, but the police were unable to find Defendant to serve him with the warrant. Although police personnel periodically searched existing computer data bases over the next two years in an effort to locate Defendant, they were unsuccessful.

In August 1990, the Honolulu Police Department (HPD) received an inquiry from a New Jersey prosecutor's office as to whether there was an outstanding Hawai'i warrant for Defendant's arrest. Apparently, New Jersey officials had recently arrested Defendant on a California warrant for offenses committed

in California in August 1988. HPD responded that there was a valid bench warrant for Defendant's arrest and instructed New Jersey officials to consider its response as a detainer for Defendant.

Defendant was transported from New Jersey to California in September 1990 to face robbery, kidnapping, use of a knife, and theft charges. In January 1991, Defendant, pursuant to a plea agreement, pleaded guilty to the robbery and use of a knife charges, and his sentencing hearing was set for February 21, 1991. On February 19, 1991, a California probation officer telephoned HPD and received confirmation that Hawai'i's warrant against Defendant was still "good." Subsequent to this phone call, HPD entered the outstanding Hawai'i warrant against Defendant into the National Crime Information Center system, thus officially informing the nation that Defendant was wanted in Hawai'i.

At the February 21, 1991 sentencing hearing, the California trial court, after discovering the existence of the Hawai'i charges against Defendant, rejected the plea agreement. Defendant thereafter went to trial on April 8, 1991 and was convicted of robbery, kidnapping, use of a knife, and vehicle theft. On May 23, 1991, Defendant was sentenced to a term of imprisonment for six years.

Prior to Defendant's California trial and for several months thereafter, California probation officials kept the City and County of Honolulu (Honolulu) prosecutor's office informed of Defendant's status. Although the prosecutor's office assured California officials that it would seek to extradite Defendant to stand trial in Hawai'i, it was not until August 19, 1991 that the Honolulu prosecutor first wrote to California authorities, requesting temporary custody of Defendant pursuant to the IAD. The prosecutor's request was received by California authorities on August 22, 1991, and they, in turn, notified Defendant of the request the following day.

On August 28, 1991, Defendant executed a notice to the Honolulu prosecutor, informing the prosecutor that Defendant was "now imprisoned in Pelican Bay State Prison at Crescent City, California[,]" and requesting that a final disposition be made of all untried indictments pending against him, in accordance with the IAD (Request for Final Disposition). The next day, the superintendent of the Pelican Bay State Prison transmitted to the Honolulu prosecutor Defendant's Request for Final Disposition, the superintendent's certificate as to Defendant's inmate status, and the superintendent's offer to deliver temporary custody of Defendant to the Honolulu prosecutor. These documents were received by the Honolulu prosecutor on September 3, 1991.

On September 10, 1991, the prosecutor wrote to accept the superintendent's offer of temporary custody of Defendant in connection with Defendant's Request for Final Disposition. Defendant was returned to Hawai'i late in the evening on September 28, 1991 and was immediately transported to the main HPD station, where he was served with the bench warrant for his arrest at 12:23 a.m. on September 29, 1991. At his arraignment hearing on October 7, 1991, Defendant entered a plea of not guilty and was given a trial week setting of January 6, 1992.

On November 14, 1991, Defendant moved to dismiss the indictment, arguing that his constitutional speedy trial and HRPP Rule 48 rights had been violated. The motion was scheduled to be heard on December 9, 1991. Pending the hearing on the motion, Defendant filed a motion to have a firm trial date set for his case. At the November 26, 1991 hearing on the motion for firm trial date, Defendant explained that since his case involved a number of expert and out-of-state witnesses, and since he was required under the IAD to be tried within 180 days of his Request for Final Disposition, the court should set a firm trial date for his case. The circuit court agreed to check the master criminal trials calendar and get Defendant a firm trial date.

On December 9, 1991, a three-day hearing on Defendant's motion to dismiss indictment for violation of speedy trial and HRPP Rule 48 commenced before First Circuit Court Judge Donald Tsukiyama (Judge Tsukiyama). At the outset of the hearing, defense counsel notified Judge Tsukiyama that, as stated in a supplemental memorandum in support of Defendant's motion, the motion to

dismiss indictment was also grounded on a violation of Article III of the IAD, which obliged the court to dismiss the indictment against Defendant with prejudice if Defendant was not

> brought to trial within one hundred eighty (180) days after [Defendant] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of [Defendant's] imprisonment and [Defendant's] request for a final disposition to be made of the indictment, information or complaint.

HRS § 834–1, art. III(a) (1993).

On January 17, 1992, at the conclusion of the evidentiary hearing on the November 14, 1991 motion to dismiss indictment, Judge Tsukiyama orally denied the motion as to all grounds raised for the dismissal. On January 27, 1992, Judge Tsukiyama filed written findings of fact and conclusions of law and an order denying the motion. As to Defendant's IAD speedy trial argument, Judge Tsukiyama entered the following relevant conclusions of law:

> a. Article III(a) of the [IAD] requires that a Defendant be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer written notice of his place of imprisonment and his request for a final disposition to be made of a pending indictment against him, unless the court grants a necessary and reasonable continuance.
>
> b. Article V of the [IAD] provides that if the Defendant is not brought to trial within the period required by Article III, the Indictment shall be dismissed.
>
> c. Defendant caused to be delivered to the prosecuting officer the written notice required by Article III(a) on August 28, 1991, the date on which he executed the written notice. Therefore, the 180–day time period has not lapsed and Defendant's rights under Article III of the [IAD] has not been violated.

Based on Judge Tsukiyama's conclusion that the 180–day period for bringing Defendant to trial under the IAD commenced on August 28, 1991, the 180–day period was to expire on February 24, 1992. On February 5, 1992, because the circuit court had still not set a firm trial date for Defendant's case, the State wrote a letter to Judge Leland Spencer, who was then the administrative judge for the criminal calendar, requesting a firm trial date for the week of February 24, 1992.

On February 7, 1992, in response to the State's letter, Judge Spencer conducted a status conference with the parties and the court's master calendar clerk. Judge Spencer notified the parties that a firm trial date was available in three days, on February 10, 1992. Defense counsel agreed to the date. However, the State, claiming that it could not arrange to transport its out-of-state witnesses on such short notice, requested a later date. Given that over 400 criminal cases were then pending trial in the First Circuit Court, Judge Spencer informed the parties that July 20, 1992 was the next available firm trial date. The State agreed to this date. Judge Spencer then assigned Defendant's case a firm trial date for the week of July 20, 1992, "subject to be recalled to be set earlier based on the availability of the courtrooms," but advised the State to seek an extension from Judge Tsukiyama of the 180–day period required by the IAD.

On February 12, 1992, the State moved for an extension of the period of time within which to bring Defendant to trial under the IAD. In support of its motion, the State argued that due to court congestion, July 20, 1992 was the earliest firm trial date available. Following extensive hearings on February 19, 1992, February 28, 1992, and March 6, 1992, Judge Tsukiyama granted the State's motion and on April 13, 1992, filed a written order which contained the following conclusions of law:

> 1. Section 834–1 Article III H.R.S. provides that a court having jurisdiction over a detainer action matter, may grant any necessary or reasonable continuances, for good cause shown.
>
> 2. The evidence supports a finding that July 20, 1992 was the earliest date for a firm trial setting, and therefore, a continuance of the 180 day time period under the [IAD] Section 834–1 Article III H.R.S. is extended to July 24, 1992.

On July 21, 1992, Defendant's three-week jury trial commenced. The jury ultimately acquitted Defendant of the attempted murder charge and convicted him instead of the lesser included misdemeanor offense of reckless endangering in the second degree. The jury also acquitted Defendant of the second degree theft charge and convicted him of carrying a firearm on his person without a permit or license.

The court thereafter sentenced Defendant to concurrent prison terms of one year for the reckless endangering charge and five years for the firearms charge. The court also ordered Defendant to pay restitution of $9,157.02. This appeal followed.

## DISCUSSION

### A. Defendant's Right to a Speedy Trial Under HRPP Rule 48

HRPP Rule 48(b) generally provides that a court, on motion of a defendant, shall dismiss charges against the defendant, "with or without prejudice in its discretion, if trial is not commenced within 6 months [or 180 days] from ... the date of arrest or of filing of the charge, whichever is sooner[.]" However, certain periods are excludable in computing the time for commencement of trial, among them, "periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including ... pretrial motions[,]" HRPP Rule 48(c)(1), and "periods that delay the commencement of trial and are caused by the absence or unavailability of the defendant[.]" HRPP Rule 48(c)(5).

In denying Defendant's November 14, 1991 motion to dismiss the indictment on HRPP Rule 48 grounds,[1] Judge Tsukiyama concluded that although a total of 1,199 days had elapsed from October 5, 1988, the date Defendant was indicted, to January 17, 1992, the date Defendant's motion to dismiss was heard and orally ruled on, the following periods, totalling 1,153 days were excludable in determining Defendant's HRPP Rule 48 right to a speedy trial:

- the sixty-four (64) day period from November 14, 1991, when Defendant filed his pre-trial motion to dismiss indictment, to January 17, 1992, when the motion was heard (64–day period).
- The 1,089–day period from October 5, 1988, when Defendant was indicted, to September 29, 1991, when Defendant was served with the warrant for his arrest (1,089–day period) during which Defendant was absent from Hawai'i and unavailable.

Subtracting the total excludable days from the total elapsed days, Judge Tsukiyama then concluded that forty-six (46) days had elapsed from the date of Defendant's indictment, well within the 180–day speedy trial requirement of HRPP Rule 48. Judge Tsukiyama's denial of Defendant's motion to dismiss charges for violation of HRPP Rule 48 is reviewable on appeal under the right wrong test. *State v. Hoey*, 77 Hawai'i 17, 28, 881 P.2d 504, 515 (1994).

Applying this standard, we conclude, pursuant to HRPP Rule 48(c)(1), that the 64–day period was properly excluded by Judge Tsukiyama as a period of delay caused by Defendant's pretrial motion. Additionally, the 1,089–day period was properly excludable pursuant to HRPP Rule 48(c)(5) as a period of delay "caused by the absence or unavailability of [Defendant]."

Accordingly, Judge Tsukiyama properly denied Defendant's November 14, 1991 motion to dismiss the indictment.

### B. Defendant's Speedy Trial Right Under the Federal and State Constitutions

Whether a defendant's right to a speedy trial under the federal and state constitutions has been violated is determined by balancing (1) the length of delay, (2) reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant by the delay. *State v. Lau*, 78 Hawai'i 54, 62, 890 P.2d 291, 299 (1995).

In balancing these factors, Judge Tsukiyama noted that more than three years

1. The record does not indicate that Defendant–Appellant Craig Willoughby filed any subsequent motions to dismiss the indictment on Hawai'i Rules of Penal Procedure Rule 48 grounds.

had elapsed between the date Defendant was indicted and the date of the hearing on his motion to dismiss, a situation which was presumptively prejudicial to Defendant. However, Judge Tsukiyama concluded that the period of delay was caused by Defendant's own absence from Hawai'i and consequent unavailability for trial. Moreover, Judge Tsukiyama observed that although Defendant had asserted his right to a speedy trial, he had failed to produce any evidence that he had suffered any prejudice to himself, his defense, or right to a fair trial.

We agree with Judge Tsukiyama that under the foregoing circumstances, Defendant's constitutional right to a speedy trial was not jeopardized.

### C. Defendant's Right to a Speedy Trial Under the IAD

#### 1. An Overview of the IAD

The IAD is an interstate compact which is intended to minimize the uncertainties that arise from "outstanding charges against a prisoner, detainers based on untried indictments, informations [sic] or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions[.]" IAD, art. I. The purpose of the IAD is to encourage the expeditious and orderly disposition of such charges, as well as the expeditious and orderly determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. Id. To accomplish its purposes, the IAD outlines procedures by which (1) a prisoner in one state may demand the final and speedy disposition of charges pending against him in another state; and (2) a state may obtain temporary custody, for purposes of trial, of a prisoner incarcerated in another state.

Where a prisoner invokes the IAD by requesting the final and speedy disposition of the charges pending against him in the other state, Article III(a) of the IAD requires that the prisoner be brought to trial within 180 days after his or her request is delivered to the prosecuting officer and court of the other state, unless (1) "for good cause shown in open court, ... the court having jurisdiction of the matter [grants] any necessary or reasonable continuance[,]" IAD art. III(a), Fex v. Michigan, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993); State v. Batungbacal, 81 Hawai'i 123, 127, 913 P.2d 49, 53 (1996); or (2) the 180–day period is tolled by periods of delay occasioned by the defendant, including delays attributable to motions filed on behalf of the defendant. IAD, art. VI; Batungbacal, 81 Hawai'i at 130, 913 P.2d at 56.

When it is the prosecuting officer who invokes the provisions of the IAD by submitting a written request for temporary custody of a prisoner in another state, the prisoner must be brought to trial on the pending charges against him within one hundred twenty (120) days after the prisoner's arrival in the state of the requesting prosecuting officer. IAD, art. IV(a)-(c). However, the IAD allows a court to "grant any necessary or reasonable continuance" of the time period "for good cause shown in open court, the prisoner or the prisoner's counsel being present." Id. Additionally, the running of the time period "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." IAD, art. VI(a). The Hawai'i Supreme Court has stated that a prisoner is "unable to stand trial" during "all those periods of delay occasioned by the defendant, including delays attributable to motions filed on behalf of the defendant." Batungbacal, 81 Hawai'i at 130, 913 P.2d at 56.

#### 2. Defendant's Speedy Trial Right Under the IAD

 In this case, a conflict existed as to whether Defendant's right to a speedy trial under the IAD was governed by Article III or IV.

Since Defendant's Request for Final Disposition was received by the Honolulu prosecutor and presumably, the First Circuit Court, on September 3, 1991,[2] Article III(a)

---

**2.** At oral argument, the deputy prosecuting attorney indicated that he had been informed by an employee of the First Circuit Court clerk's office

that if the request of Defendant–Appellant Craig Willoughby (Defendant) for final disposition of the charges against him had been received with

of the IAD required that Defendant's trial commence within 180 days of September 3, 1991, or no later than March 1, 1992. At the same time, since the State had initially invoked the IAD by requesting temporary custody of Defendant on August 19, 1991, Article IV(c) of the IAD required that Defendant be tried within 120 days of September 28, 1991, the day Defendant was returned to Hawai'i pursuant to the State's request. That is, Article IV of the IAD required that Defendant's trial commence no later than January 26, 1992.

As a threshold matter, therefore, we must determine which time period governs this case.

Some jurisdictions which have wrestled with this issue have held that the determinative factor in deciding the applicable limitations period is which party first invoked the IAD. In *Shewan v. State*, 396 So.2d 1133 (Fla.App.1980), for example, the Florida District Court of Appeal held:

> If the prisoner first requests final disposition, the state has 180 days after proper receipt of the notice and request to bring him to trial. However if the state first requests delivery of the prisoner, the state must bring him to trial within 120 days of his arrival in the state's custody.

*Id., on rehearing*, at 1134. *See also State v. Mason*, 90 N.J.Super. 464, 218 A.2d 158 (1966) (where the IAD was invoked solely by the defendant, the defendant was required to be tried within the 180–day period mandated by Article III; after such time period had lapsed, the state could not retroactively request temporary custody of the defendant and then apply the 120–day period under Article IV in determining the defendant's trial commencement date).

In *Foran v. Metz*, 463 F.Supp. 1088, 1097 (S.D.N.Y.1979), a United States district court took a seemingly different approach and used the limitations period which terminated first to determine the defendant's speedy trial

right under the IAD. Since the petitioner in *Foran* had been actually produced in the requesting state less than sixty days after the issuance of the bench warrant, the court held that "[t]he 120–day limit of Article IV(c) of the [IAD], rather than the 180–day limit of Article III(a), is applicable." *Id.* at 1097.

In this case, it was the State which first invoked the IAD by requesting temporary custody of Defendant pursuant to Article IV. Additionally, the 120–day period under Article IV lapsed over a month prior to the termination of the 180–day period under Article III. Under these circumstances, and in light of the purposes of the IAD, we conclude that Defendant's right to a speedy trial under the IAD was governed by Article IV.

Defendant was thus required to be tried within 120 days of his return to Hawaii, i.e., by January 26, 1992. Since Defendant's trial did not actually commence until July 21, 1992, 176 days later, the dispositive issue on appeal is whether the full 176 days can be attributed to either (1) necessary and reasonable continuances that were granted for good cause shown in open court, or (2) delays occasioned by Defendant.

### 3. *Whether Good Cause Existed for the Necessary and Reasonable Continuance of Defendant's Trial*

#### a.

■ The State filed its motion to continue Defendant's trial on February 12, 1992, seventeen days after the 120–day period within which Defendant was required to be tried had already expired. After conducting a hearing on the State's motion on February 19, 1992, February 28, 1992, and March 6, 1992, Judge Tsukiyama granted the motion by a written order filed on April 13, 1992, seventy-eight days after the 120–day period had expired.

The majority of courts which have considered the issue have held that a continuance

---

no identification of a criminal number, the staff would probably have filed the request away in a box. Since the staff of the clerk's office was apparently unaware of the stringent requirements of the IAD, which Hawai'i has adopted as statutory law, and since Defendant's request for

final disposition was received by the prosecuting attorney's office on September 3, 1991, we will assume for purposes of this appeal that the request was received by the First Circuit Court on that day as well.

of a defendant's trial beyond the limitations period specified by the IAD cannot be granted following the expiration of the prescribed period. *See, e.g., Dennett v. State,* 19 Md. App. 376, 311 A.2d 437, 440 (Spec.App.1973) (recognizing that a motion for continuance of the 180–day limitation period under Article III of the IAD "had to be made and granted within the prescribed 180 days to effectively halt the running of the period and thereby to preclude dismissal" of the charges against defendant); *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 607–08 (1973) (holding that even if the state "might arguably have had good cause to obtain a continuance, it does not have, nor did it attempt to offer, an excuse for its dilatoriness in seeking the continuance"); *State v. Patterson,* 273 S.C. 361, 256 S.E.2d 417, 418 (1979) (holding that in light of the purpose and goal of the IAD, "we read the enactment to provide that any requested continuance may be granted only at or prior to the expiration of the 180[-]day period prescribed in the statute").

We agree that the purposes and goals of the IAD would be subverted if a continuance of the time period within which a defendant must be tried under the IAD could be retroactively granted. Accordingly, we conclude that once the time period within which Defendant was required to be tried under the IAD had lapsed, Judge Tsukiyama lacked authority to grant the continuance of Defendant's trial.

b.

■ Even if the continuance of Defendant's trial had been timely granted, we agree with Defendant that good cause did not exist for granting the continuance. The evidence adduced at the hearing on the State's continuance motion revealed that due to normal court congestion, the earliest firm date that could be assigned for Defendant's trial was the week of July 20, 1992. Based on this fact, Judge Tsukiyama concluded, over Defendant's objection, that a continuance of Defendant's trial until July 24, 1992 was reasonable and necessary.

We note, however, that during the hearing before Judge Tsukiyama, the First Circuit Court criminal trials master calendar clerk testified that although July 20, 1992 was the "earliest available" firm trial date that she could assign for Defendant's trial, she would have been able to assign an earlier trial date if she had been "ordered" to find an earlier date. Since the purpose of the IAD is to encourage "the *expeditious* ... disposition" of charges outstanding against a prisoner, IAD article I (emphasis added), we are not persuaded, based on the facts in this case, that "good cause" existed for a reasonable and necessary continuance of Defendant's trial.

As the District of Columbia Court of Appeals noted in *Haigler v. United States,* 531 A.2d 1236 (D.C.App.1987):

The "good cause" provision in the IAD has been strictly construed.... This strict construction approach arises from the recognition that, because the government, through its agents, controls the procedural aspects of the Act, and because the IAD's underlying purpose is to promote the best interests of the prisoner by preventing abuses in the detainer system, the Act's provisions must be liberally construed so as to effectuate its purposes.

In order for continuances granted due to court congestion to constitute continuance granted for "good cause," there must be documented or recorded evidence that the trial court took affirmative steps to try the defendant within the applicable time limits. '[U]nder the generally accepted view, before the trial court may delay a trial beyond the time limits set out in Articles III or IV because of calendaring difficulties, there must be some showing that the trial judge attempted to take steps to have the trial commence in a timely fashion.'

*Id.* at 1243–44 (citations omitted).

The record in this case reflects that despite Defendant's persistent efforts to be tried within the required IAD time limits, the motions court took a rather relaxed approach to scheduling the commencement of Defendant's trial. Under these circumstances, we conclude that good cause did not exist under the IAD for a continuance of Defendant's trial.

Compare *State v. Caspino*, 73 Haw. 256, 831 P.2d 1334 (1992), where the Hawai'i Supreme Court held that for purposes of determining a criminal defendant's speedy trial right under HRPP Rule 48, ordinary court congestion is not a circumstance which tolls the six-month period for calculating a defendant's speedy trial right under that rule. *See also State v. Baron*, 80 Hawai'i 107, 114, 905 P.2d 613, 620 (1995).

### D. *Whether Defendant's Inability to Stand Trial Tolled the Speedy Trial Time Period Provided by Article IV of the IAD*

In *State v. Batungbacal, supra*, the Hawai'i Supreme Court was called upon to construe Article VI(a) of the IAD, which provides:

> In determining the duration and expiration dates òf the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

The supreme court noted that the phrase "unable to stand trial" is not defined in the IAD. *Id.* at 129, 913 P.2d at 55. However, the supreme court agreed with the majority of federal courts which have held that a defendant is unable to stand trial during the pendency of " 'all those periods of delay occasioned by the defendant, and specifically, the periods of delay occasioned by the . . . motions filed on behalf of the defendants.' " *Id.* at 130, 913 P.2d at 56. The supreme court accordingly instructed that delays occasioned by a defendant must be excluded in calculating whether the defendant was timely prosecuted under the IAD. *Id.*

▮▮▮ The record on appeal indicates that Defendant was responsible for the following periods of delay which tolled the time period

within which he was required to be prosecuted under the IAD:

1) the sixty-four (64) day period from November 14, 1991, when Defendant filed his Motion to Dismiss Indictment for Violation of Speedy Trial and HRPP Rule 48, until January 17, 1992, when the circuit court orally denied the motion; [3]

2) the forty-eight (48) day period from January 9, 1992, when Defendant filed his Motion to Dismiss with Prejudice for Violation of Court Order Pursuant to HRPP Rule 16(b), to March 5, 1992, when Defendant withdrew this motion; [4]

3) the six (6) day period from March 31, 1992, when Defendant filed his Motion to Continue Pre–Trial Motions Deadline, to April 6, 1992, when the motion was orally granted by the circuit court;

4) the fifty-five (55) day period from April 10, 1992, when Defendant filed his Motion for Independent Testing of Physical Evidence, to June 4, 1992, when the circuit court orally granted the motion;

5) the eight (8) day period from May 19, 1992, when Defendant filed his Motion to Continue Pretrial Motions Deadline, to June 12, 1992, when the circuit court orally granted the motion; [5]

6) the six (6) day period from June 12, 1992, when Defendant filed his Motion for Mental Examination of Complaining Witnesses to June 18, 1992, when the motion was orally denied;

7) the eleven (11) day period from June 25, 1992, when Defendant filed his Motion to Compel Discovery, or in the Alternative, Motion to Dismiss Indictment with Prejudice and his Motion to Enforce Court Ordered Independent Testing, until July 6, 1992, when the first motion was orally

---

**3.** Defendant filed other motions which were disposed of within the same 64–day time period.

**4.** The period from January 9, 1992 to March 5, 1992 actually includes fifty-six (56) days. However, the eight (8) day period from January 9, 1992 to January 17, 1992 has been excluded from the 56–day period since it is encompassed within the 64–day period from November 14, 1991 to January 17, 1992 already excluded in

calculating Defendant's right to a speedy trial under the Interstate Agreement on Detainers.

**5.** The period from May 19, 1992 to June 12, 1992 actually includes twenty-four (24) days. However, since part of this period overlaps with the period during which Defendant's Motion for Independent Testing of Physical Evidence was pending, the overlapping period was subtracted from the twenty-four (24) day period.

denied by the circuit court and the second motion was withdrawn by Defendant.

Thus, for purposes of the IAD, a total of 198 days should be excluded in determining the timeliness of Defendant's trial because Defendant was unavailable for trial during the pendency of his various motions. Excluding this number from the total number of days which had elapsed between September 28, 1992, the date of Defendant's arrival in Hawai'i, and July 21, 1992, the date Defendant's trial commenced, Defendant was tried within the 120–day period mandated by Article IV of the IAD.

Consequently, the circuit court correctly concluded that Defendant's speedy trial right under Article IV of the IAD was not violated.

### E. *The Propriety of Defendant's Sentence*

HRS § 706–605(1)(d) (1993) provides, in relevant part, as follows:

> (1) Except as provided in parts II and IV of this chapter and subsection (2) of this section and subject to the applicable provisions of this Code, the court may sentence a convicted defendant to one or more of the following dispositions:

> \* \* \* \* \* \*

> (d) To make restitution in an amount the defendant can afford to pay; provided that if the court orders, in addition to restitution, payment of fine in accordance with paragraph (b), the

payment of restitution shall have priority over the payment of the fine[.]

In *State v. Johnson*, 68 Haw. 292, 297–98, 711 P.2d 1295, 1299 (1985), the Hawai'i Supreme Court held that in ordering a defendant to pay restitution, "it is incumbent upon the trial court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which Defendant can afford." Since the record does not indicate that the circuit court made the requisite findings of fact and conclusions of law before sentencing Defendant to pay restitution, the State concedes that Defendant was improperly sentenced to pay restitution in this case.

### CONCLUSION

Based on the foregoing, we vacate that part of the Judgment which sentenced Defendant to pay $9,157.02 in restitution and remand this case to the First Circuit Court with instructions that it reconsider its restitution sentence according to the guidelines set forth in *Johnson*. In all other respects, the Judgment is affirmed.