932 P.2d 328

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**David Jerome SCHMIDT, Defendant–Appellant.**

**No. 17185.**

Intermediate Court of Appeals of Hawai'i.

Jan. 17, 1997.

As Amended Jan. 28, 1997.

James S. Tabe, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Robert K. Kekuna, Jr., Deputy Prosecuting Attorney, County of Maui, on the brief, Wailuku, Maui, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

We hold that (1) Defendant–Appellant David Jerome Schmidt (Defendant) was

brought to trial on his theft charge within 180 days as required under article III(a) of the Interstate Agreement on Detainers (IAD or the IAD), Hawai'i Revised Statutes (HRS) chapter 834, (2) the 180–day period ran from receipt of Defendant's request for final disposition of outstanding charges by the State of Hawai'i (the State), and not from the date the request was filed with Minnesota officials having custody of Defendant, (3) the time attributable to determining Defendant's motion to continue trial and the period of the continuance are excludable from the 180–day period, and (4) the excludable periods tolled the 180–day period without the necessity of a formal determination by the trial court (court). We hold, further, that (5) Defendant's failure to object to the trial date for his bail jumping charge, which was set beyond the 180–day period, waived any objections brought after the period had run and that Defendant implicitly consented to his bail jumping trial date by requesting a consolidation of his theft trial with his bail jumping trial for the purpose of plea bargaining. Finally, we hold that (6) Defendant was not entitled to credit on his Hawai'i sentence for time served for a Minnesota offense, and (7) any improper trial comments by the State were harmless beyond a reasonable doubt.

### I.

On March 16, 1993, a jury found Defendant guilty of second degree theft, in violation of HRS § 708–831(1)(b) (Supp.1990) (theft) and first degree bail jumping, in violation of HRS § 710–1024 (1985) (bail jumping). On May 14, 1993, judgment was filed accordingly, and the court sentenced Defendant to five years incarceration in each case with the terms to run concurrently.

On June 14, 1993, Defendant appealed.

On appeal, Defendant raises six arguments.

### II.

### A.

Four of Defendant's six arguments relate to the application of the IAD.

■ The IAD sets forth:

procedures by which compact members may secure the presence at trial of a prisoner incarcerated in the jurisdiction of another compact member and by which a prisoner may demand the speedy disposition of charges against him or her pending in a jurisdiction other than the one in which he or she is incarcerated.

*State v. Batungbacal,* 81 Hawai'i 123, 126, 913 P.2d 49, 52 (1996); *State v. Willoughby,* 83 Hawai'i 496, 501, 927 P.2d 1379, 1384 (Haw.App.1996). Article III(a) of the IAD requires that a prisoner demanding disposition of pending charges must be brought to trial in the charging state within 180 days of the prisoner's demand. This "speedy trial" provision states, in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a ... party state, and whenever during the ... term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *the prisoner shall be brought to trial within one hundred eighty (180) days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court* of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and *the prisoner's request for a final disposition* to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

HRS § 834–1, art. III (1993) (emphases added). In essence, by submitting an article III request, a prisoner forfeits his or her right to contest extradition in "exchange for the surety that outstanding charges will be resolved at trial within the specified time frame of 180 days[.]" *Batungbacal,* 81 Hawai'i at 127, 913 P.2d at 53.

### B.

The following facts are relevant to Defendant's IAD contentions.

On March 23, 1992, Defendant was indicted for theft. On April 27, 1992, Defendant was indicted for bail jumping. Arrest warrants were issued for Defendant.

On August 6, 1992, while incarcerated in the Minnesota Correctional Facility, Defendant filed a request for final disposition of the aforesaid outstanding indictments pursuant to article III of the IAD. On August 17, 1992, the Maui Prosecutor received the appropriate IAD forms.[1] On December 19, 1992, Defendant was returned to Hawai'i.

On December 23, 1992, the court set Defendant's trial on the theft charge for February 8, 1993. Measured from August 17, 1992, a total of 175 days would elapse to the trial date of February 8. His trial on the bail jumping charge was set for March 15, 1993, 210 days from August 17, 1992.

On January 28, 1993, Defendant filed a motion to continue trial on the theft charge to March 15, 1993. At the time of Defendant's motion to continue, 164 days of the 180–day period had elapsed. On February 2, 1993, the court granted the Defendant's motion to continue trial to March 15, 1993, and Defendant requested consolidation of the trials on the theft and the bail jumping charges. The State did not object.

On March 5, 1993, Defendant filed a motion to dismiss the theft and bail jumping indictments. The court denied the motion to dismiss at a hearing held on March 10, 1993. An order was entered accordingly on March 16, 1993.

On March 15, 1993, Defendant proceeded to trial on the theft and bail jumping charges and was found guilty on March 16, 1993.[2]

1. A copy of the letter accompanying the IAD forms sent to the prosecutor's office was also transmitted to the court administrator's office.

2. At trial, evidence showed that on February 28, 1992, Defendant exited the Woolworth store in the Maui Mall Shopping Center without paying for merchandise totaling $306.41.

Mr. Michael Kilinski, the store associate manager, testified that Defendant signed a form acknowledging he took the items. Detective Robert Fernandez of the Maui Police Department testified that Defendant admitted to walking out of Woolworth without paying for the items listed above. Also, Defendant testified that he left Woolworth without paying for the merchandise.

## III.

### A.

■ First, Defendant argues that the court erred in finding that the IAD's 180–day period commenced on August 17, 1993, the date when the State received notice of the Defendant's desire to dispose of his Hawai'i charges. Instead, Defendant contends that the time for counting the IAD "speedy trial" provision began on August 6, 1992, the date when he filed his request for a final disposition of his outstanding charges with the official having custody of him.

Contrary to Defendant's position, "[t]he 180–day time limit of article III(a) begins to run once the prisoner's request for final disposition is delivered to the prosecuting officer and court of the receiving state." *Batungbacal,* 81 Hawai'i at 127, 913 P.2d at 53 (citing *Fex v. Michigan,* 507 U.S. 43, 53–54, 113 S.Ct. 1085, 1091–92, 122 L.Ed.2d 406 (1993) ("[T]he 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.")).

When the parties filed their briefs, *State v. Carroll,* 4 Haw.App. 573, 670 P.2d 1290 (1983), controlled. *Carroll* stood for the proposition that the appropriate date to commence the time period for counting the IAD's "speedy trial" provision was when the prisoner filed a request for final disposition with

On April 1, 1992, Defendant had been arraigned and placed on temporary supervised release pending a bail hearing. On April 6, 1992, a bail hearing had been held. The court had ordered that bail remain in the amount of one thousand dollars and that Defendant post the bail by 8:30 a.m. on April 8, 1992 or if unable to do so, that he report to the Maui Community Correctional Center. At trial, the State presented evidence of Defendant's failure to post bail or to turn himself in to the Maui Community Correctional Center by 8:30 a.m. on April 8, 1992, a violation of the April 6, 1992 court order.

the official having custody of him. *Carroll,* 4 Haw.App. at 576, 670 P.2d at 1292–93.

■ The IAD, however, is a congressionally sanctioned interstate compact coming within the scope of the Compact Clause, U.S. Const., Art. I, § 10, cl. 3. *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985). The Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, provides in pertinent part: "No State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State...." Thus,

> [b]y vesting in Congress the power to grant or withhold consent, or to condition consent on the States' compliances with specified conditions, the Framers sought to ensure that Congress would maintain ultimate supervisory power over cooperative state action that might otherwise interfere with the full and free exercise of federal authority.

*Cuyler v. Adams,* 449 U.S. 433, 439–40, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981). The IAD, therefore, is a federal law subject to federal court construction. *Carchman,* 473 U.S. at 719, 105 S.Ct. at 3403 (citing *Cuyler,* 449 U.S. at 438–42, 101 S.Ct. at 706–09 ("[C]ongressional consent transforms an interstate compact ... into a law of the United States[.]")).

Consequently, the United States Supreme Court's construction of article III(a) in *Fex* is controlling, and the holding in *Carroll* is no longer viable. As previously indicated, the Hawaiʻi Supreme Court has adopted the United States Supreme Court's interpretation of article III(a). *Batungbacal,* 81 Hawaiʻi at 127, 913 P.2d at 53. Therefore, we disregard the State's concession in its answering brief that the 180–day period began to run on August 6, 1992.

We hold, then, that the lower court did not err when it held that the 180–day time period began to run on August 17, 1992.

## B.

### 1.

■ Second, Defendant asserts that the lower court erred in excluding the period

beginning January 28, 1993 and ending February 2, 1993 from the aforesaid 180–day time limit. This period reflects the time which elapsed between Defendant's filing of his motion for a trial continuance in the theft case and the date of the hearing at which the court granted his motion.

HRS § 834–1, art. VI(a) of the IAD states in pertinent part:

> (a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said *time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.*

(Emphasis added.)

In *Batungbacal,* the Hawaiʻi Supreme Court analyzed this section of the IAD. *Batungbacal,* 81 Hawaiʻi at 129–30, 913 P.2d at 55–56. After surveying various jurisdictions, the supreme court chose to "adopt the position of the majority of the federal courts[.]" *Id.* at 130, 913 P.2d at 56. Consequently, the court "construed the phrase 'unable to stand trial' as including within the article VI tolling provision all those periods of delay occasioned by the defendant, including delays attributable to motions filed on behalf of the defendant." *Id.; see also Willoughby,* 83 Hawaiʻi at 501, 927 P.2d at 1384.

Defendant's motion to continue trial was a motion filed on behalf of the Defendant. Thus, we hold the five-day period of delay from January 28, 1993, the day the motion was filed, to February 2, 1993, the date of the court's decision, was correctly excluded because all periods of delay "attributable to motions filed on behalf of the defendant" toll the 180–day period. *Batungbacal,* 81 Hawaiʻi at 130, 913 P.2d at 56; *United States v. Nesbitt,* 852 F.2d 1502, 1516 (7th Cir.1988) (holding that all periods of delay occasioned by the multiple motions filed on behalf of the defendant operate to toll running of article III), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Roy,* 771 F.2d 54, 59 (2d Cir.1985) (holding the time it takes to resolve a good faith appeal from the grant of a defendant's pretrial motion is properly excluded under arti-

cle VI(a)), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986); *United States v. Hines,* 717 F.2d 1481 (4th Cir.1983), *cert. denied,* 467 U.S. 1214, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Saffold v. State,* 521 So.2d 1368, 1371 (Ala.Cr.App.1987) ("When the court takes a motion filed by the defendant under advisement, a continuance is implicitly granted and the period tolled for a reasonable time until a ruling is made."); *State v. Finley,* 277 S.C. 548, 290 S.E.2d 808 (1982).

### 2.

■ Furthermore, we hold that the thirty-five day period from February 8, 1993, the original theft trial date, to March 15, 1993, the continued trial date, must also be excluded from the 180–day speedy trial requirement because Defendant was "unable to stand trial" by virtue of the trial continuance "occasioned by [him]."[3] *Id.* at 130, 913 P.2d at 56; *Willoughby,* 83 Hawai'i at 501, 927 P.2d at 1379; *see also Commonwealth v. Washington,* 488 Pa. 133, 411 A.2d 490 (1979) (excluding period of delay resulting from continuance beyond the period of limitation expressly consented to by defendant); *State v. Armstrong,* 624 S.W.2d 36 (Mo.1981) (excluding period of delay resulting from continuance granted at defendant's request).

After excluding these forty days, we conclude that Defendant was brought to trial on his theft charge in 170 days, 10 days within the 180–day speedy trial provision required by the IAD, HRS § 834–1, art. III.

### C.

■ Third, Defendant contends that the lower court erred in excluding any period from the 180–day period because the State failed to comply with article VI(a) of the IAD. Article VI(a) provides that the running of the 180–day speedy trial period can be tolled whenever the prisoner is unable to stand trial "as determined by the court having jurisdiction of the matter." Defendant argues that because the State did not at any time obtain a formal determination from the court that the 180–day period should stop running, any potentially excludable period cannot be excluded.

■ In light of our ruling above, Defendant's argument is not persuasive. The 180–day period provided in article III(a) may be tolled for three reasons:

(1) to allow the trial court to grant any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, ... [article] III(a); (2) for as long as the defendant is unable to stand trial, ... [article] VI(a); or (3) for any period of delay in bringing the defendant to trial caused by the defendant's request or to accommodate the defendant.

*Saffold,* 521 So.2d at 1371; *see also People v. Grubbs,* 39 Colo.App. 436, 570 P.2d 1299 (1977); *State v. McGann,* 126 N.H. 316, 493 A.2d 452 (1985). Accordingly, when the court grants a continuance for good cause in open court with the defendant or his counsel present as required under article III(a), the IAD does not require the court to render a formal determination that the speedy trial provision is tolled under article VI(a).

*State ex rel. Corbin v. Superior Court,* 155 Ariz. 365, 746 P.2d 937, 939 (App.1987), cited by Defendant, only stands for the proposition that the proper way to toll the 180–day period is to obtain a ruling that the defendant is unavailable for trial. In *Corbin,* the state moved to exclude a portion of a four-month period of delay, but the trial court denied the motion without prejudice while a collateral proceeding was pending before the Arizona Supreme Court. *Id.* But after the supreme court proceeding was concluded, the state failed to obtain a final ruling on its motion. *Id.* Consequently, the court of appeals concluded that there was "no continuance granted by the court having jurisdiction of the matter." *Id.* It thus held that the time in issue would not be excluded from the 180–day period because the state had not obtained a ruling that defendant was unavail-

---

3. The period of five days from the filing of the motion to dismiss on March 5, 1993 to the court's decision at the hearing on March 10, 1993 was also excludable but is included within the larger excludable period from February 8 to March 15, 1993. *See United States v. Dawn,* 900 F.2d 1132 (Wis.), *reh'g denied, cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990).

able for trial during the subject period. *Id.*, 746 P.2d at 939–40.

While a formal determination may have been helpful for purposes of the record, there is no question that the court having jurisdiction of this case granted a continuance which tolled the running of the 180–day "speedy trial" provision. *Batungbacal,* 81 Hawai'i at 130, 913 P.2d at 56; *see also Stroble v. Anderson,* 587 F.2d 830, 838–39 (6th Cir. 1978) (holding where defendant did not file motion for continuance and did not receive notice of prosecutor's motion for continuance and neither defendant nor counsel were present before judge when continuance was granted pursuant to informal practices of court, continuance was not granted "on good cause shown in open court" so as to toll running of time limitation in IAD), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). As a result, the State was under no obligation to obtain any further "determination" from the court other than the ruling upon Defendant's continuance request.

### D.

Fourth, Defendant argues that his motion to continue trial on the theft case did not apply to his bail jumping case.

The record reflects that on January 28, 1993, Defendant filed a written motion in the theft case to continue trial from February 8, 1993 to March 15, 1993. Defense counsel's affidavit in support of the motion noted that trial in the bail jumping case was already set for March 15, 1993, and that he was "actually pursuing a plea agreement that may eliminate the need for trial *in both cases.*" (Emphasis added.) At the hearing on February 2, 1993, both the theft and bail jumping cases were addressed. The hearing was convened as follows: "Criminal Number 92–0139(3) and 92–0205(3), State of Hawaii versus David Schmidt. This is a motion to consolidate and a motion to continue trial."

At the hearing, defense counsel agreed to the consolidation of the cases for trial:

Defense counsel: Your Honor, as our affidavit points out in the motion to continue, [D]efendant has two cases currently set before the [c]ourt. *The case of one of them [bail jumping] is set for March 15th. We're asking that this case [theft] also be continued to March 15th.* We're in the process of attempting a settlement. It looks promising. We'll ask that his case be put to that date.

Prosecutor: Your Honor, the State has no objection.

Court: *This is a motion for consolidating and continuation. Continued.*

Defense counsel: *That's true.*

Court: So noted, so ordered.

(Emphases added.) By reason of the consolidation, the cases became one for purposes of trial and thus for the purpose of determining whether there was a violation of the 180–day "speedy trial" provision. Hawai'i Rules of Penal Procedure (HRPP) Rule 13; *In the Interest of John Doe,* 79 Hawai'i 265, 273–74, 900 P.2d 1332, 1334–41 (App.1995) ("On appeal, a trial court's order consolidating cases for trial under HRPP Rule 13 shall not be disturbed absent an abuse of discretion[;]" however, "the court should refuse to order a joint trial if there is any doubt about the fairness of the trial.") (brackets, citation and internal quotation marks omitted).

A defendant may waive the limitations imposed by the IAD. *United States v. Odom,* 674 F.2d 228, 230 (4th Cir.1982), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982); *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979); *Camp v. United States,* 587 F.2d 397, 399–400 (8th Cir.1978). A waiver is shown by proof that the defendant has affirmatively requested "to be treated in a manner contrary to the procedures prescribed by" the speedy trial provisions of the IAD. *Eaddy,* 595 F.2d at 344; *Yellen v. Cooper,* 828 F.2d 1471, 1474 (10th Cir.1987) (holding that conduct inconsistent with IAD will be viewed as establishing a waiver of statutory rights); *United States v. Lawson,* 736 F.2d 835, 840 (2d Cir.1984); *Glover v. State,* 599 So.2d 79, 82 (Ala.Cr.App.1992) ("Because the appellant failed to timely object to the trial court's ordering two continuances and setting the case for trial beyond the 180–day period, we find that the appel-

lant has waived this issue."); *United States v. Tummolo,* 822 F.Supp. 1561, 1564 (S.D.Fla.1993) (holding waiver of prisoner's rights under IAD is shown by proof that prisoner affirmatively requested treatment in manner contrary to procedures outlined by the IAD); *People v. Jones,* 197 Mich.App. 76, 495 N.W.2d 159, 160 (1992) ("A waiver is established when a defendant, either expressly or impliedly, agrees or requests to be treated in a manner contrary to the terms of the IAD."), *appeal denied,* 442 Mich. 926, 503 N.W.2d 902 (1993). Moreover, this same result may be reached by holding that a defendant is estopped from invoking the IAD when he has requested a procedure inconsistent with its provisions. *United States v. Scallion,* 548 F.2d 1168, 1170 (5th Cir.1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).

■ Therefore, "[t]o avoid waiving any rights under the IAD, the defendant generally must object to those procedures or actions by the trial court that may infringe upon the protections afforded by the IAD[.]" *Jones,* 495 N.W.2d at 161; *Odom,* 674 F.2d at 231–32. However, the burden of satisfying the speedy trial requirements of the IAD is on the prosecutor and trial court. *Brown v. Wolff,* 706 F.2d 902, 907 (9th Cir.1983) ("A waiver is not ordinarily found from mere silence. The [IAD] puts no affirmative obligation on the [defendant] to alert the court of his IAD rights.... A [defendant] may waive his IAD rights, however, if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD.... In this case, by explicitly agreeing to a continuance of trial before the 180–day period had run and then agreeing to a further continuance up to the date of his trial ... [defendant] acted contrary to the speedy trial provisions of the IAD.") (citation omitted); *People v. Allen,* 744 P.2d 73, 77 (Colo. 1987).

■ We do not believe that the setting of the original trial date for the bail jumping case past the 180–day period should result in a dismissal. First, Defendant never objected to the March 15, 1993 date until after the time period had run, and therefore, he waived his objection. *See Saffold,* 521 So.2d at 1372 (holding defendant waived 180–day speedy trial time limitation after he was silent on two occasions when trial court set trial date and waited until 180–day time limit had elapsed instead of putting the court on notice so it "could have set an appropriate trial date or granted a 'necessary or reasonable continuance.'"); *Toro v. State,* 479 So.2d 298, 299 (Fla.App. 3 Dist.1985) (holding defendant could not be heard to complain where defense acquiesced in fixing trial date beyond period specified in IAD); *Scrivener v. State,* 441 N.E.2d 954, 956 (Ind.1982) (holding defendant's failure to object, either at time when trial date was set or before expiration of 180–day period, precluded dismissal under IAD's speedy trial provision); *Pethtel v. State,* 427 N.E.2d 891, 894–95 (Ind. App.1981) (holding that where a trial date is set beyond the 180–day speedy trial limitation under the IAD, but defendant does not object to the trial date at the time it was set or during the remainder of the 180–day limit, the defendant can be said to have waived any objection to the trial date and is not entitled to have the indictment dismissed); *Jones,* 495 N.W.2d at 161 (holding defendant voluntarily waived his speedy trial rights under IAD where both he and counsel acquiesced in late trial date in part because defendant had another trial scheduled before then in which he was being represented by same counsel).

■ Second, because Defendant moved for the theft trial continuance to March 15, 1993, agreed to consolidation of the theft and bail jumping cases for trial on March 15, 1993, and represented to the court that he sought the continuance to conduct plea bargain discussions in both cases, we conclude that Defendant implicitly consented to the March 15, 1993 bail jumping trial date. *See Odom,* 674 F.2d at 230 (holding defendant waived speedy trial rights under IAD when he undertook course of action inconsistent with IAD by bargaining for a plea); *Allen,* 744 P.2d at 75 (stating that while silence by defendant and counsel when trial date is set does not amount to waiver, an affirmative request by defense counsel for a trial date beyond the statutory trial period can be sufficient to waive defendant's rights); *State v. Greenwood,* 665 N.E.2d 579, 582 (Ind.1996)

(holding defense counsel's motion to set trial date outside IAD period constituted waiver); *Farmer v. United States,* 737 F.Supp. 884, 886 (D.Md.1990) ("Petitioner's affirmative acts of negotiating and entering a guilty plea in the federal proceedings also constitute a waiver of any rights that he may otherwise have under the IAD[ ]."); *Commonwealth v. Martin,* 445 Pa. 49, 282 A.2d 241, 243–44 (1971) (cautioning that a defendant under the IAD "cannot lull the prosecution into plea bargaining attempts" and then demand dismissal after expiration of the speedy trial period); *cf. Utterback v. State,* 261 Ind. 685, 310 N.E.2d 552, 554 (1974) ("We will vigorously enforce the right to a speedy trial, but we do not intend that accused persons should escape trial by abuse of the means that we have designed for their protection."). *But cf. State ex rel. Clark v. Long,* 870 S.W.2d 932, 940 (Mo.App.1994) (holding that preliminary discussions as to whether state might be willing to engage in plea negotiations was not the type of plea bargaining which provided state with reasonable excuse for failing to bring case to trial within 180 days of defendant's request to be brought to trial as required by the IAD).

## IV.

■ Fifth, Defendant maintains that the court erred in not crediting him with time served in Minnesota detention after the Hawai'i detainer to hold him for return to Hawai'i was filed against him. HRS § 706–671(1) (1985) provides:

> **§ 706–671 Credit for time of detention prior to sentence; credit for imprisonment under earlier sentence for same crime.** (1) When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution *following the defendant's arrest for the crime for which sentence is imposed,* such period of detention following the defendant's arrest shall be deducted from the minimum and maximum terms of such sentence. The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the length of such detention of the defendant prior to sentence

in any State or local correctional or other institution, and the certificate shall be annexed to the official records of the defendant's commitment.

(Emphasis added.) The "evident purpose of HRS § 706–671(1) is to credit a defendant for the time he or she is confined prior to sentencing in connection with the defendant's ultimate conviction." *State v. Mason,* 79 Hawai'i 175, 183, 900 P.2d 172, 180 (App.), *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995).

Defendant was sentenced for the Hawai'i offenses of theft and bail jumping. Defendant was imprisoned in Minnesota for "unauthorized use of motor vehicle," *another crime,* not for any of the crimes for which he was sentenced in Hawai'i. The record indicates that Defendant was eligible for release from Minnesota on this charge on December 18, 1992. Defendant was returned to Hawai'i on December 17, 1992. It follows, then, that Defendant was not held in Minnesota for the Hawai'i offenses. Accordingly, Defendant is not entitled to any credit for time served in Minnesota. *Cf. id.* (holding that under HRS § 706–671(1) a defendant is entitled to credit for time served in confinement while awaiting extradition before or after conviction on the indictment, complaint, or information giving rise to the conviction); *State v. Brant,* 72 Haw. 230, 234, 813 P.2d 854, 856 (1991) (holding that under HRS § 706–671(2) (1985) there is no entitlement to credit for time served in federal detention for unrelated offenses).

## V.

### A.

■ Lastly, Defendant argues that he was denied a fair trial because of prosecutorial misconduct. He complains that during closing arguments the prosecutor improperly (1) argued facts outside the record, (2) appealed to the jury's sense of law and order, (3) criticized Defendant's exercise of his right to a jury trial, (4) personally attacked defense counsel, and (5) asserted his personal opinion regarding Defendant's guilt.

At trial, defense counsel did not object to all of the prosecutor's statements made dur-

ing closing argument.[4] Matters not raised by objection in the trial court are still reviewable at the discretion of the appellate court. *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 675 (1988) ("[T]he decision to take notice of plain error must turn on the facts of the particular case to correct errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'") (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

■■■ "'Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial.'" *State v. Sanchez,* 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App. 1996) (quoting *State v. McGriff,* 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994) (citations omitted)). "To determine whether reversal is required under HRPP Rule 52(a) because of improper remarks by a prosecutor which could affect Defendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review." *Id.* (citations and internal quotation marks omitted). Furthermore, we may consider the nature of the misconduct, the promptness of a curative instruction or lack of it, and the strength or weakness of the evidence against the defendant. *State v. Senteno,* 69 Haw. 363, 366, 742 P.2d 369, 372 (1987).

We review each category of statements which Defendant maintains amounted to prosecutorial misconduct.

### 1.

■■■ Defendant argues that the following statements referred to facts outside the record: (1) Defendant's confession led to a reduction in bail; (2) Defendant "ran so far that [the State] had to go to Minnesota to get

him;" and (3) Defendant's confession was made because "he never expected to stand trial in this case."

The reference to the lowered bail was improper. At no time was this information presented to the jury during trial.[5]

The reference to Defendant's running to Minnesota did not amount to error because it merely reiterated the fact that Defendant was a bail jumper. In fact, during closing argument, defense counsel conceded that the material elements of the bail jumping charge had been met.[6]

The reference to Defendant's confession was not error. Defendant testified that he believed the sole consequence for shoplifting would be to bar him from shopping at the Woolworth store. Hence, it was permissible to infer from Defendant's testimony that he did not believe his actions were so serious as to warrant a trial. Therefore, the prosecutor could argue such an inference.

### 2.

■■■ We do not believe that during closing argument the prosecutor improperly appealed to the jury's sense of law and order. Specifically, Defendant objects to the following statements made by the prosecutor:

[T]he State is entitled to something. The people of this community are also entitled to something. They're entitled to a conviction for—. . .

[objection and bench conference]

As I've told you, the State is also entitled to a conviction when it has proven each of his [sic] elements beyond a reasonable doubt, and I'll suggest in this case, beyond all doubt, each and every element. Please, as I told you, don't allow the [D]efendant to escape from these charges the

---

4. Defense counsel objected to only two of the nine prosecutor's statements which Defendant now challenges on appeal.

5. Reference was made to the lowered bail at a voluntariness hearing immediately before the start of trial outside of the presence of the jury.

6. Defense counsel stated in closing argument:

With regards to the bail jumping charge, that charge also—we're not trying to fool anybody here. You heard all the evidence. There's no question that the material elements of that charge in our opinion have been met. He was released on supervisory release. He was told either to post the bail or turn himself in on a particular day. There's evidence suggesting that that did not happen. That's [sic] not really much that needs to be considered.

same way he tried to elude the charges in the past. Don't allow him to do that.

In their context, these statements reminded the jury that a conviction is only possible if the State proves its case beyond a reasonable doubt. Even if we did construe these statements as an appeal to the jury to act as the conscience of the community, we do not believe that these particular statements would so inflame the jury as to be deemed improper. *See United States v. Kopituk*, 690 F.2d 1289, 1342 (11th Cir.1982); *Gonzalez v. State*, 714 S.W.2d 19, 24 (Tex.App.1985) (holding it was proper for counsel to make pleas for law enforcement in summation).

Thus, we conclude that these statements did not constitute error.

### 3.

▪ Defendant contends that the following statements amounted to an improper attack on Defendant's right to a jury trial:

*The defendant is a very bold man.* He's demonstrated that time and time again. *In fact, he has demonstrated it for you sitting right there.*

*The reason we're here is because the defendant has requested this.* He is entitled to this. *The defendant confessed to this offense* and you saw the form[7] that was put up there.

(Emphases added.)

We believe it was improper for the prosecutor to trivialize Defendant's right to a jury trial by arguing that although Defendant had confessed, the jury was there "because the defendant has requested this [a jury trial]." *See* U.S. Const. amend. VI and Haw. Const. art. I, § 14 (guaranteeing the accused the right to a trial by jury); *cf. Cunningham v. Zant*, 928 F.2d 1006, 1009 (11th Cir.1991) (describing the prosecutor's statement that he was "offended" that defendant exercised his right to trial as "outrageous").

### 4.

Next, Defendant contends that the following prosecutor's comments concerning defense counsel amounted to error:

*Please do not fall for the common defense trick that's being tried here.*

And the defense is able to stand here and say, well, Mr. Kilinski [an associate manager of Woolworth store] had some inconsistency. He tried to say this, he tried to say. That there was no inconsistency. The inconsistencies were the defense's inconsistencies. They were the ones that misunderstood his testimony. They were the ones who did not want to give him his statement so he could tell you exactly what he wrote in his handwriting. That's exactly as he testified to you yesterday.

He was not confused about what he said. He was never given the opportunity to look at what he said so he could explain. *But all these little things are part of this thing to fool you, to get you to think somehow the State has fallen short on its evidence.*

(Emphases added.) Defense counsel utilized similar comments during its opening statement when he said, "Do not be fooled by things that the prosecutor attempts to get you to believe that's not charged here." Arguably, these comments were improper. *Cf. Sanchez*, 82 Hawai'i at 532, 923 P.2d at 950 (holding that prosecutor's argument implying "that an acquittal would brand the jury members as 'fools'" "improperly directed the jury from its duty to decide the case on the evidence by making predictions of the consequences of the jury's verdict.") (quoting 1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8(d) (2d ed. 1986)).

### 5.

▪ Finally, Defendant contends that the prosecutor improperly asserted his personal opinion twice:

Your job is to sit here to decide if the State has proven its case. We have every reason to believe that we have, based on the evidence even if you believe the defendant's story.

As I've told you, the State is also entitled to a conviction when it has proven

---

**7.** Exhibit 5 in evidence is a document entitled "Acknowledgment Form F.W. Woolworth Co."

executed by Defendant and listing the type and value of the merchandise taken by Defendant.

each of his elements beyond a reasonable doubt, and I'll suggest in this case, beyond all doubt, each and every element.

The prosecutor's use of the term "we" was not improper. When taken in context, these statements were not averments of the prosecutor's personal belief; rather they merely requested the jury to consider the evidence that bore on Defendant's guilt. *State v. Nakoa,* 72 Haw. 360, 817 P.2d 1060 (1991) (holding that when the prosecutor's comments were taken in context they merely requested that the jurors rely on their own observations, common sense, etc., in examining the credibility of the officers); *cf. Sanchez,* 82 Hawai'i at 529, 923 P.2d at 946 (holding that prosecutor's assertion of his personal evaluation of the credibility of certain witnesses in final argument constituted prosecutorial misconduct); *State v. Marsh,* 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986) ("Prosecutors are ... bound to refrain from expressing their personal views as to a defendant's guilt or credibility of witnesses.").

### B.

While we disapprove of some of the prosecutor's statements, after a complete review of the record, we do not believe that the cumulative effect of these statements resulted in a denial of Defendant's right to a fair trial. At trial, Defendant testified that he obtained items from the Woolworth store without paying for them. In closing argument, defense counsel conceded that Defendant stole the items involved, stating, "So with regards to the charge of theft, there's no doubt from the evidence presented here that in fact the defendant admitted to you that he took these items from Woolworth's." Defense counsel also conceded that Defendant "jumped" bail, stating "There's no question that the material elements of that charge (bail jumping) have been met."

Thus, in light of the overwhelming evidence of Defendant's guilt, we conclude that those of the prosecutor's comments which were improper were harmless beyond a reasonable doubt. *See State v. Suka,* 79 Hawai'i 293, 303–04, 901 P.2d 1272, 1282–83 (App.), *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); HRPP Rule 52(a).

### VI.

For the foregoing reasons, we affirm the May 14, 1993 judgment.