STATE of Wisconsin EX REL. James W. KERR, Petitioner-Appellant,

v.

Gary MCCAUGHTRY, Warden, Respondent-Respondent.†

Court of Appeals

*No. 92–3235. Submitted on briefs October 8, 1993.—Decided March 3, 1994.*

(Also reported in 515 N.W.2d 276.)

†Petition to review denied.

54

For the petitioner-appellant the cause was submitted on the briefs of *T. Christopher Kelly* of Madison.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. This is an appeal from an order denying James W. Kerr's petition for a writ of habeas corpus challenging a detainer proceeding under the Interstate Agreement on Detainers (IAD), § 976.05, STATS. The issue is whether, after the State of Arizona's previous, identical IAD proceeding had been dismissed, Arizona could reuse documents from the first proceeding to obtain Kerr's transfer. Because we conclude that it could not do so, we reverse and direct the trial court to grant Kerr's petition for habeas corpus.

James W. Kerr is incarcerated in the Waupun Correctional Institution. On August 10, 1992, the prison received a request from an Arizona district attorney for Kerr's temporary custody so that Kerr could be tried in Arizona for possession of marijuana and other related charges. Section 976.06, STATS., requires that a hearing on the district attorney's request must be held within thirty days of the prison's receipt of the request for temporary custody, if a prisoner requests a hearing. Because Kerr's hearing was scheduled on the thirtieth day and the Wisconsin district attorney was not prepared to proceed, the circuit court dismissed the request for temporary custody.

On September 15, 1992, the Arizona district attorney sent a letter to the prison's registrar, resubmitting his request for Kerr's temporary custody. Kerr contends that this letter is not a detainer, and that without a detainer, an IAD proceeding may not be held.

The record contains an IAD Form I, dated September 21, 1992, and entitled "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition." Gary R. McCaughtry, Warden of the Waupun Correctional Institution, is shown as the custodial authority. There is a space for the signature of a "Warden-Superintendent-Director," below which is typed: "by: Pamela S. Knick, Registrar." No signature appears in the space. Kerr signed Form I on September 21, indicating that he was not requesting a final disposition of the Arizona charges. Pamela S. Knick witnessed Kerr's signature.

The record also contains an IAD Form V, dated August 3, 1992, and entitled "Request for Temporary Custody." It is signed by the Arizona district attorney, an Arizona judge, and a person acting on behalf of the Governor of Arizona. The parties do not dispute that this is a duplicate copy of a document which was submitted to the Dodge County Circuit Court on September 9, 1992, and dismissed by that court on that date.

When Kerr again appeared before the circuit court, he argued that because he had been discharged from the first detainer, a second detainer proceeding was impermissible, and that even if a second proceeding were authorized, Arizona was not permitted to refile its request without again obtaining judicial approval. The trial court denied his request to dismiss the second proceeding.

SECOND DETAINER PROCEEDING

■ First, Kerr argues that Arizona did not lodge a second detainer against him. The IAD does not define "detainer." But in *United States v. Mauro*, 436 U.S. 340

(1978), the Court accepted a definition found in both the House and Senate Reports: " '[A] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Id.* at 359 (quoting H.R. REP. NO. 1018, 91st Cong., 2d Sess. 2 (1970); S. REP. NO. 1356, 91st Cong., 2d Sess. 2 (1970)). The district attorney's letter does not fit that description. But the IAD Form I filed by the registrar does. Kerr does not argue that that form is defective because it was not signed by the district attorney, or for that matter, by the registrar or the warden. We therefore conclude that the IAD form filed by the registrar was a second detainer.

Citing *State v. Sykes*, 91 Wis. 2d 436, 283 N.W.2d 446 (Ct. App. 1979), Kerr next argues that a prisoner, having once been made the subject of a detainer and then of a request for temporary custody, should not suffer the continuing effects of a detainer if he or she requests a § 976.06, STATS., hearing and is not given one within the time required by statute. But *Sykes* only holds that the failure to provide an inmate with a hearing on a request for temporary custody within thirty days requires the prisoner's release from the detainer. *Sykes*, 91 Wis. 2d at 439, 283 N.W.2d at 448. In *Aiello v. State*, 166 Wis. 2d 27, 33, 479 N.W.2d 178, 180-81 (Ct. App. 1991), we said: "Section 976.06, STATS., requires a hearing within thirty days of receipt of a written 'request.' Section 976.06 nowhere proscribes the filing of multiple detainer requests. We will not impose such a requirement." We conclude that *Aiello* is dispositive of Kerr's argument.

Kerr's next argument is that Arizona's failure to again obtain a judge's approval of the request for temporary custody (IAD Form V) violates the IAD. The requirement of judicial oversight is found in § 976.05(4)(a), STATS., Article IV of the IAD:

> The appropriate officer of the jurisdiction in which an untried indictment . . . is pending shall be entitled to have a prisoner against whom he has lodged a detainer . . . made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: *provided that the court having jurisdiction of such indictment . . . has duly approved, recorded and transmitted the request. . . .* [Emphasis added.]

In *Aiello*, we noted that where the state commenced successive IAD requests, an order arising out of one of those requests was final, and that further orders in that case were ineffective. *Aiello*, 166 Wis. 2d at 30, 479 N.W.2d at 179. Thus, a new detainer proceeding was necessary after the dismissal of a prior proceeding. *Id.* at 30, 479 N.W.2d at 179-80. This suggests that when a judge dismisses an IAD request, the requesting state must begin again if it wishes to obtain the temporary custody of a prisoner. And this is consistent with the requirement of judicial oversight found in Article IV of the IAD that we have quoted. A court must approve a district attorney's request for temporary custody of an out-of-state prisoner. Inherent in the requirement of approval is the notion that the judicial branch of government be given the opportunity to do more than rubber-stamp a district attorney's request.

The opportunity for inquiry permits a judge to consider a district attorney's successive attempts to use the requesting state's resources to prosecute wrongdoing. Were we to dilute this oversight by permitting the district attorney to "bank" a judge's approval, or to use a judge's approval after the facts had changed, we would be weakening the legislative directive of judicial control of IAD proceedings.

The Respondent asserts that very little had changed since the judge's approval of the IAD Form V. While that may be true, we conclude that a bright-line rule is better in IAD cases. Were we to conclude that some type of balancing test should be used in successive IAD cases, litigation questioning successive IAD requests would be the rule, and the real litigation—the criminal trial in the requesting state—would be delayed. With rapid communications available to prosecutors, judges and prisons across the country, a rule requiring a new IAD Form V for each IAD request is neither difficult nor time-consuming.

We conclude that the trial court's order dismissing the first IAD proceeding dismissed the IAD Form V, and made it unusable in a successive proceeding. We therefore reverse the trial court's order and remand with instructions to dismiss this IAD proceeding. If the Arizona district attorney still desires Kerr's temporary custody, a new proceeding will be necessary.

*By the Court.*—Order reversed and cause remanded with directions.