913 P.2d 49

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Ray Adam BATUNGBACAL, Defendant–Appellant.**

**No. 18415.**

Supreme Court of Hawai'i.

March 14, 1996.

Michael A. Weight, on the briefs, Honolulu, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the brief, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Ray Adam Batungbacal, pursuant to his conditional plea of guilty to promoting a dangerous drug in the first degree,[1] appeals from the circuit court's denial of his motion to dismiss for violation of the Interstate Agreement on Detainers. For the reasons discussed below, we affirm the circuit court's denial of Batungbacal's motion to dismiss and, accordingly, affirm the judgment of conviction.

---

1. Batungbacal reserved his right to contest the circuit court's order in accordance with Hawai'i Rules of Penal Procedure (HRPP) Rule 11(a)(2) (1993), which provides:

*Conditional Pleas.* With the approval of the court and the consent of the State, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

## I. BACKGROUND

### A. The Interstate Agreement on Detainers (IAD)

Drafted in 1956 by the Council of State Governments, the IAD is an interstate compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the federal government [hereinafter collectively referred to as compact member(s) ]. The IAD was adopted by Hawai'i in 1965. *See* Hawai'i Revised Statutes (HRS) chapter 834.

■■■ The IAD outlines procedures by which compact members may secure the presence at trial of a prisoner incarcerated in the jurisdiction of another compact member and by which a prisoner may demand the speedy disposition of charges against him or her pending in a jurisdiction other than the one in which he or she is incarcerated. The IAD is invoked only when a "detainer" is initially sent from a compact member having untried charges pending against the prisoner [hereinafter, the receiving state] to a compact member with custody over the prisoner [hereinafter, the sending state]. *United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978). "Detainer" is not defined within the IAD; however, the Supreme Court has held that a detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he [or she] is wanted to face pending criminal charges in another jurisdiction." *Mauro,* 436 U.S. at 359, 98 S.Ct. at 1846 (citations omitted); *see also Cuyler v. Adams,* 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 705–06 n. 3, 66 L.Ed.2d 641 (1981). A detainer alone, filed by a receiving state, does not require the sending state to produce the prisoner; it merely alerts officials in the sending state that the prisoner is wanted in another jurisdiction and that the custodial institution should not release the prisoner

without notifying the receiving state. *See Mauro,* 436 U.S. at 358, 364 n. 29, 98 S.Ct. at 1846, 1849 n. 29; *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3401, 87 L.Ed.2d 516 (1985); *Fex v. Michigan,* 507 U.S. 43, 44–45, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993); *Reed v. Farley,* 512 U.S. 339, —— n. 1, 114 S.Ct. 2291, 2294 n. 1, 129 L.Ed.2d 277 (1994).[2]

Because "a detainer [may remain] lodged against a prisoner without any action being taken on it[,]" *United States v. Dixon,* 592 F.2d 329, 332 n. 3 (6th Cir.1979), "detainers based on untried indictments, informations or complaints ... produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." HRS § 834–1, art. I (1993); *see also United States v. Ford,* 550 F.2d 732, 737–40 (2d Cir.1977) (recounting abuse of the detainer system prior to the existence of the IAD).

■■■ The legislative history of the IAD indicates that a primary purpose of the IAD is to protect prisoners against whom detainers are outstanding because

**a prisoner who has had a detainer lodged against him [or her] is seriously disadvantaged by such action. He [or she] is in custody and therefore is in no position to seek witnesses or to preserve his [or her] defense. He [or she] must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner[,] he [or she] sometimes loses interest in institutional opportunities because he [or she] must serve his [or her] sentence without knowing what additional sentences may lie before him [or her], or when, if ever, he [or she] will be in a position to employ the education and skills he [or she] may be developing.**

---

2. We note that in *State v. Russell,* 62 Haw. 474, 481, 617 P.2d 84, 89 (1980), this court, relying on article IV(a) of the IAD, characterized a detainer as "a request for temporary custody." This court's reliance on article IV(a) for this statement, however, was misplaced because article IV(a) states in pertinent part that "[t]he appropriate officer ... shall be entitled to have a prisoner *against whom he [or she] has lodged a*

*detainer ... made available ... upon presentation of a written request for temporary custody*[.]" HRS § 834–1, art. IV(a) (emphases added). Furthermore, the statement in *Russell* directly contradicts settled federal law on the issue. *See State v. Brant,* 72 Haw. 230, 231 n. 1, 813 P.2d 854, 855 n. 1 (1991) ("Federal prison forms label the State's request to be notified before appellant's release a 'detainer'[.]").

S.Rep. No. 1356, 91st Cong., 2d Sess. 3 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4864, 4866. Thus, the IAD "is designed to encourage the expeditious and orderly disposition of ... charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." *Mauro,* 436 U.S. at 340, 98 S.Ct. at 1836–37 (citation and internal quotation marks omitted); *see also Fex,* 507 U.S. at 43, 113 S.Ct. at 1085; *Carchman,* 473 U.S. at 719–20 and 730 n. 8, 105 S.Ct. at 3403 and 3409 n. 8.

■ Once a detainer is lodged, either the prisoner, pursuant to article III of the IAD, or the receiving state, pursuant to article IV of the IAD, can set in motion the procedures by which the prisoner is tried in the receiving state. Each article contains provisions specifying the number of days within which a prisoner must be brought to trial in the receiving state. Article III of Hawai'i's IAD provides in pertinent part:

**(a) Whenever a person has entered upon a term of imprisonment in a ... party state, and whenever during the ... term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner,** *he [or she] shall be brought to trial within one hundred eighty (180) days after he [or she] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his [or her] imprisonment and his [or her] request for a final disposition to be made of the indictment, information or complaint;* **provided that for good cause shown in open court, the prisoner or his [or her] counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody....**

. . . .

**(c) The ... official having custody of the prisoner shall promptly inform him [or her] of ... any detainer lodged against him [or her] and shall also inform him [or her] of [the] right to make a request for final disposition of the indictment ... on which the detainer is based.**

HRS § 834–1, art. III (emphasis added).

■ The 180–day time limit of article III(a) begins to run once the prisoner's request for final disposition is delivered to the prosecuting officer and court of the receiving state. *Fex,* 507 U.S. at 53–54, 113 S.Ct. at 1091. A prisoner's article III request is deemed to be a waiver of the right to contest extradition and a consent by the prisoner to produce his or her body in any court necessary to effectuate the purposes of the IAD. HRS § 834–1, art. III(e); *Cuyler,* 449 U.S. at 445, 101 S.Ct. at 710. In other words, in exchange for the surety that outstanding charges will be resolved at trial within the specified time frame of 180 days, the prisoner forfeits his or her right to contest extradition. *See Parker v. United States,* 590 A.2d 504, 510 (D.C.App.) ("Contrary to a request under Art. III which requires that the prisoner waive his [or her] extradition rights, ... a prisoner's extradition rights are preserved when the receiving state requests custody under Art. IV of the IAD." (Citation omitted.)), *cert. denied,* 502 U.S. 973, 112 S.Ct. 451, 116 L.Ed.2d 469 (1991). Thus, an article III request for final disposition is an elective procedure pursuant to which a prisoner voluntarily returns to the receiving state.

Article IV of Hawai'i's IAD provides in pertinent part:

**(a) The appropriate officer of the jurisdiction in which an untried indictment ... is pending shall be entitled to have a prisoner against whom he [or she] has lodged a detainer ... made available ... upon presentation of a written request for temporary custody or availability to the appropriate authorities ...; and provided further that there shall be a period of thirty (30) days after receipt ... within which period the governor of the sending state may disapprove the request....**

. . . .

(c) In respect of any proceeding made possible by this Article, *trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state,* but for good cause shown in open court, the prisoner or his [or her] counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

HRS § 834–1, art. IV (emphasis added).

■ A prisoner, returned to the receiving state pursuant to article IV, retains "the procedural protections of the Extradition Act [3] . . . as well as any other procedural protections the sending State guarantees persons being extradited from within its borders." *Cuyler,* 449 U.S. at 448, 101 S.Ct. at 712. As the *Cuyler* Court stated:

*Article IV(d) safeguards certain of the prisoner's rights.* Normally, the only way to get a prisoner from one jurisdiction to another for purposes of trial on an indictment, information or complaint is through resort to extradition or waiver thereof. If the prisoner waives, there is no problem. However, *if he [or she] does not waive extradition,* it is not appropriate to attempt to force him [or her] to give up the safeguards of the extradition process, even if this could be done constitutionally.

*Id.* at 447–48, 101 S.Ct. at 711 (some emphasis in original omitted) (quoting Council of State Governments, Suggested State Legislation Program for 1957, at 78–79). Thus, article IV is essentially an involuntary procedure applicable where the prisoner contests his or her return to the receiving state.

If a prisoner is not brought to trial within either the applicable 120–day period prescribed in article IV or the 180–day period prescribed in article III, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and [the] detainer based thereon shall cease to be of any force or effect." HRS § 834–1, art. V(c); *see also State v. Taylor,* 729 S.W.2d 483, 485–86 (Mo. App.1987) (holding that, if the time limits of the IAD have been violated, the charges underlying the detainer must be dismissed); *cf. State v. Carroll,* 4 Haw.App. 573, 670 P.2d 1290 (1983).

B. *Batungbacal's Case*

■ The relevant events, in chronological order, are as follows:

July 24, 1991 While in federal custody, Batungbacal is indicted in Hawai'i on two counts of promoting a dangerous drug in the first degree. He is later transferred to the federal correctional institution (FCI) in Sheridan, Oregon (FCI Sheridan).

March 20, 1992 The Hawai'i prosecuting attorney lodges an IAD detainer *and* requests temporary custody of Batungbacal under article IV.

February 22, 1993 Hawai'i receives a response from FCI Sheridan: (1) stating that Batungbacal was informed of Hawai'i's request; (2) offering to deliver temporary custody in response to Hawai'i's article IV request; and (3) enclosing Batungbacal's request for disposition under IAD article III.

March 19, 1993 Batungbacal is returned to Hawai'i.

April 19, 1993 Batungbacal files a motion to dismiss under HRPP Rule 48.

June 16, 1993 The court grants Batungbacal's HRPP Rule 48 motion without prejudice,[4] and Batungbacal is reindicted on the same day.

---

3. "A prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer 'hearing' at which he [or she] is informed of the receiving State's request for custody, his [or her] right to counsel, and his [or her] right to apply for a writ of habeas corpus challenging the custody request." *Cuyler,* 449 U.S. at 443, 101 S.Ct. at 709.

4. Although neither party raises the issue, we note that in this case, for purposes of the IAD, the dismissal of Batungbacal's first indictment, under HRPP Rule 48, did not constitute a violation of the IAD. Courts in other jurisdictions have also interpreted the IAD in the same manner. *See State v. King,* 84 Or.App. 165, 168, 733 P.2d 472, 475, *review denied,* 303 Or. 455, 737 P.2d 1248 (1987) (The IAD "permits the receiving

July 22, 1993 Batungbacal files a motion to dismiss for violation of article IV of the IAD, claiming that 120 days have expired since his arrival in Hawai'i.

August 30, 1993 A hearing is held on Batungbacal's 7/22/93 motion to dismiss. The court orally denies the motion.

November 19, 1993 The court enters FOF, COL, and an order denying Batungbacal's motion to dismiss for violation of article IV of the IAD, which it had orally denied on August 30, 1993, concluding that article III, and not article IV, of the IAD governed Batungbacal's case and that, as of August 30, 1993, the date of the hearing on Batungbacal's motion to dismiss, article III had not been violated.

July 11, 1994 Batungbacal enters a guilty plea to count II,[5] conditioned on his being permitted to appeal the circuit court's 11/19/93 order denying his 7/22/93 motion to dismiss for violation of the IAD.

September 8, 1994 A judgment of conviction is entered.

September 14, 1994 This timely appeal is filed.

## II. DISCUSSION

Batungbacal's motion to dismiss for violation of the IAD was premised upon two propositions: (1) article IV governs this case; and (2) on July 17, 1993, 120 days had elapsed since he was returned to Hawai'i, and, thus, the continued prosecution was untimely. The circuit court, however, disagreed, concluding that article III governed and that, as of August 30, 1993, the date of

the hearing on Batungbacal's motion to dismiss, article III had not been violated. On appeal, Batungbacal essentially contends that: (1) both article III and article IV may operate in this case without conflict; and (2) his article III request for disposition did not invalidate the requirements of article IV.[6] Batungbacal submits that article IV controls, thus rendering Hawai'i's continued prosecution untimely, and, because the IAD mandates dismissal, that the court should have granted his motion to dismiss.

Thus, the question, as presented by the parties on appeal, is essentially which article controls under the circumstances of this case. However, we need not reach the question as presented because we hold that neither article III nor article IV had been violated as of July 22, 1993, the date Batungbacal filed his motion to dismiss.

 The circuit court, in calculating the days that had elapsed since Batungbacal's arrival in Hawai'i, failed to consider the provisions of article VI(a) of the IAD, which provides in pertinent part:

**In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, *the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial*, as determined by the court having jurisdiction of the matter.**

HRS § 834-1, art. VI(a) (emphasis added). Problematically, the phrase "unable to stand trial" is not defined in HRS chapter 834. However, some courts have construed the phrase "unable to stand trial" as including

state to retain custody and to bring new charges [against a prisoner] 'arising out of the same transaction' as the original charge in the indictment under which the prisoner was [first] transferred."); *Valentine v. Commonwealth*, 18 Va. App. 334, 337, 443 S.E.2d 445, 447 (1994) (holding that once a prisoner has waived the right to contest the validity of the detainer and arrived voluntarily in the receiving state, there is no bar to trying the prisoner on new indictments covering the same conduct); *State ex rel. Kerr v. McCaughtry*, 183 Wis.2d 54, 515 N.W.2d 276 (1994).

5. A "Motion for Nolle Prosequi of Count I and Order" was filed on September 9, 1994.

6. Batungbacal also argues that, because "the form signed by Appellant only states that Appellant was requesting a final disposition of indictments and would waive extradition for that purpose", it is unfair to expect him to know that the state no longer had an obligation to commence trial within 120 days, especially since he signed the request without benefit of counsel. We note that Batungbacal cites to no authority, nor does HRS chapter 834 provide, that a prisoner must have an informational meeting with counsel prior to signing in order to validate the request. We therefore hold that this claim is without merit.

within the article VI tolling provision only those periods of delay occasioned by the defendant's physical or mental incapacity. *See, e.g., Birdwell v. Skeen,* 983 F.2d 1332, 1340–41 (5th Cir.1993); *Stroble v. Anderson,* 587 F.2d 830, 838 (6th Cir.1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). A majority of the federal courts, on the other hand, have defined the "unable to stand trial" language as including within the article VI tolling provision "all those periods of delay occasioned by the defendant, and specifically, the periods of delay occasioned by the ... motions filed on behalf of the defendants." *United States v. Dawn,* 900 F.2d 1132, 1136 (7th Cir.1990) (internal quotation marks omitted) (holding that time period of article III of the IAD tolled "during the pendency of [defendant's] motion to dismiss") (citing *United States v. Nesbitt,* 852 F.2d 1502, 1516 (7th Cir.1988); *United States v. Taylor,* 861 F.2d 316, 321 (1st Cir.1988); *United States v. Roy,* 771 F.2d 54, 59 (2d Cir.1985); *United States v. Scheer,* 729 F.2d 164, 168 (2d Cir.1984); *Bush v. Muncy,* 659 F.2d 402, 408–09 n. 4 (4th Cir.1981)). In our view, such an interpretation of the IAD allocates responsibility for delay where it belongs—on the party filing the motion. Accordingly, we adopt the position of the majority of the federal courts that have construed the phrase "unable to stand trial" as including within the article VI tolling provision all those periods of delay occasioned by the defendant, including delays attributable to motions filed on behalf of the defendant.

Moreover, we note that our holding that delays occasioned by the defendant must be excluded for purposes of calculating timely prosecution under the IAD is further supported by analogizing article VI of the IAD to HRPP Rule 48, which also requires the prosecution to commence trial of an accused within a certain time period.[7] HRPP Rule 48 explicitly provides that the periods of delay occasioned by a defendant's motion to dismiss shall not be attributable to the prosecution. *See* HRPP Rule 48(c)(1) and 48(d).[8]

The record indicates that Batungbacal filed his motion to dismiss the indictment pursuant to HRPP Rule 48(b) on April 19, 1993, which the court granted, dismissing the indictment without prejudice, fifty-eight days later, on June 16, 1993. Thus, for purposes of the IAD and pursuant to article VI, fifty-eight days should be tolled because Batungbacal was "unable to stand trial" during the pendency of the motion. *See, e.g., State v. Hoey,* 77 Hawai'i 17, 29, 881 P.2d 504, 516 (1994) ("[T]he language of HRPP 48(c) contemplates only those periods of time that postpone trial.... Therefore, to be excludable under HRPP 48(c), a time period must actually delay a defendant's trial."); *United States v. Dawn,* 900 F.2d 1132 (7th Cir.1990) (time period tolled during pendency of motion to dismiss).

■ On appeal, Batungbacal specifically challenges the circuit court's November 19, 1993 order wherein the court, as previously indicated, determined that article III governed and that, as of August 30, 1993,[9] the

---

7. Under HRPP Rule 48(b), "the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from ... the date of arrest or of filing of the charge, whichever is sooner[.]"

8. HRPP Rule 48(c) provides that:
The following periods shall be excluded in computing the time for trial commencement:
(1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges....
HRPP Rule 48(d) explains that

[f]or purposes of subsection (c)(1) of this rule, *the period of time, from the filing through the prompt disposition of the following motions filed by a defendant, shall be deemed to be periods of delay* resulting from collateral or other proceedings concerning the defendant: *motions to dismiss,* ... for withdrawal of counsel....
(Emphases added.)

9. We note that, as with HRPP Rule 48 calculations, the tolled period attributable to a defendant's motion to dismiss is from the *filing of the motion through its disposition.* Thus, the dispositive date with respect to Batungbacal's motion to dismiss for violation of the IAD is July 22, 1993, the date the motion was filed, not August 30, 1993. However, as discussed *infra,* because neither article III nor article IV had been violat-

date of the hearing on Batungbacal's July 22, 1993 motion to dismiss, the IAD had not been violated. Assuming, but not deciding, that article III governs this case, after excluding the fifty-eight day tollable period, only ninety-two days had elapsed between February 22, 1993, the date the prosecution received Batungbacal's article III request, and July 22, 1993, the date Batungbacal filed his motion to dismiss, well within the prescribed 180 days.

Likewise, assuming, but not deciding, that article IV governs this case, after excluding the fifty-eight day tollable period, only sixty-seven days had elapsed between March 19, 1993, the date Batungbacal arrived in Hawai'i, and July 22, 1993, well within the prescribed 120 days.

Consequently, we hold that the circuit court correctly concluded that article III of the IAD had not been violated; and, as demonstrated above, neither had article IV been violated.

### III. *CONCLUSION*

Accordingly, we affirm Batungbacal's judgment of conviction.

ed the court's erroneous reference to that date is harmless.