# IN THE SUPREME COURT OF THE STATE OF NEVADA

EDMOND PAUL PRICE,
Appellant,

vs.

THE STATE OF NEVADA,
Respondent.

No. 64281

FILED

OCT 04 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## [CORRECTED] ORDER AFFIRMING IN PART AND REVERSING IN PART

This is an appeal from a judgment of conviction entered pursuant to a jury verdict of conspiracy to commit kidnapping, conspiracy to commit robbery, false imprisonment with a deadly weapon, burglary while in possession of a deadly weapon, robbery with the use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm. Eighth Judicial District Court, Clark County; James Bixler, Judge; Jennifer P. Togliatti, Judge. The charges arose from an incident in Primm, Nevada between Ronald Wall and appellant Edmond Paul Price.[1]

*The district court did not err under the Interstate Agreement on Detainers*

Price makes several arguments related to the Interstate Agreement on Detainers (IAD). Broadly, they fall into two categories: (1) the district court was required to send Price back to California after this court ordered his first indictment be dismissed; and (2) the district court

---

[1]Judge Bixler presided over the trial, while Judge Togliatti presided over the proceedings on remand from this court. The facts of this case are known to the parties and were included in this court's order of limited remand. *See Price v. State,* Docket No. 64281 (Order of Limited Remand, May 10, 2016). Therefore, we do not recite or expand on the facts in this order unless necessary for our disposition.

17-33645

erred by denying Price's second motion to dismiss for violation of IAD's speedy trial provision.

*The district court was not required to send Price back to California after this court ordered his first indictment be dismissed*

After Price initiated an Article III request for final disposition of untried indictments, informations, or complaints under the IAD, he was transported to the Clark County Detention Center ("CCDC") on July 7, 2011. Price filed a motion to dismiss, complaining that the State violated his right under Marcum[2] to notice and the opportunity to testify before the grand jury, which the district court denied on October 13, 2011. The district court granted a stay, so Price could petition this court for a writ of mandamus.[3] On May 10, 2012, this court granted the petition and directed the lower court to dismiss the indictment.[4]

On May 17, 2012, the district court dismissed the indictment as directed by the writ. The district court orally ordered the CCDC to notify California that Price was free to return California at the earliest convenience. At some point, the State issued a subpoena to the jail to bring Price to the grand jury to testify.[5] On May 25, 2012, the State reindicted Price for the same charges as in the first indictment. On June 5, 2012, the district court denied Price's oral motion not to be remanded on the new

[2]*Sheriff, Humboldt Cnty. v. Marcum*, 105 Nev. 824, 825-26, 783 P.2d 1389, 1390 (1989) *amended by*, 790 P.2d 497 (Nev. 1990).

[3]Price initially represented himself, but counsel was appointed for purposes of pursuing the writ.

[4]*Price v. Eighth Judicial Dist. Court*, Docket No. 60440 (Order Granting Petition, May 10, 2012)

[5]The subpoena is not in the record.

 

indictment and to be returned to California at the earliest practicable time. On June 14, 2012, The State arraigned Price and both Price and the State invoked the 60–day right to a speedy trial. Trial was set for July 30, 2012.

Price offers three arguments to support his claim that the IAD required Nevada to send Price back to California after the first indictment was dismissed. First, he argues that the district court violated NRS 178.620, Article V(e), by not signing a written order to transfer Price to California after it dismissed the first indictment. Second, he argues that the prosecutor improperly issued a subpoena to CCDC to keep Price in jail so he could testify at the grand jury proceedings, as opposed to sending Price back immediately following dismissal of the first indictment. Third, Price argues that the district court erred by ordering him to be remanded on the new indictment warrant when he should have been returned to California.

As Price's contentions require us to interpret NRS 178.620, art. V(d)-(e), de novo review applies. *Sheriff, Washoe Cnty. v. Marcus*, 116 Nev. 188, 192, 995 P.2d 1016, 1018 (2000). Statutory interpretation begins with the statute's text. If a statute is "clear on its face," it will be enforced as written. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011)(internal quotation marks omitted).

Nevada is a party to the IAD, which is codified at NRS 178.620. *Diaz v. State*, 118 Nev. 451, 452, 50 P.3d 166, 166 (2002). A principal purpose of the IAD is to "encourage the expeditious and orderly disposition of [charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints] and determination of the proper status of any and all detainers based on untried indictment, information or complaints." NRS 178.620, art. I; *see Diaz*, 118 Nev. at 455, 50 P.3d at 168 ("The IAD is designed to systemize the disposition of untried indictments.").

To facilitate this goal, the IAD provides cooperative measures. *Id.* Among these cooperative measures is a state's ability to lodge a detainer against a defendant serving a term of imprisonment in another state, gain custody of said defendant, and prosecute the defendant on the charges underlying the detainer. *United States v. Mauro*, 436 U.S. 340, 351-53 (1978); *see also* NRS 178.620, art. IV(a), V(a). In relevant part, NRS 178.620, art. V(d), provides:

> the temporary custody referred to in [the IAD] shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers *or for prosecution on any other charge or charges arising out of the same transaction.*

(emphasis added).

By its plain terms, article V(d) allowed Nevada to hold Price for prosecution on charges arising out of the Primm incident despite dismissal of the first indictment. *See id.* As other courts have recognized, Article V(d) "permits the receiving state to retain custody and to bring new charges 'arising out of the same transaction' as the original charge in the indictment under which the prisoner was transferred." *State v. King*, 733 P.2d 472, 475 (Or. Ct. App.1987), *aff'd*, *King v. Brown*, 8 F.3d 1403, 1410 (9th Cir. 1993); *see State v. Batungbacal*, 913 P.2d 49, 54 n.4 (Haw. 1996) (noting that dismissal of the defendant's first indictment and his re-indictment on the same day did not violate the IAD). We agree and hold that a receiving state can keep custody of a prisoner and bring new charges arising out of the same transaction that formed the basis of the detainer. Since the second indictment against Price arose out of the same transaction—the Primm incident—that led to the first indictment, which formed the basis of the detainer, the State could retain Price while it sought a second indictment. While NRS 178.620, art. V(e), does state that a "prisoner shall be returned

SUPREME COURT
OF
NEVADA

(O) 1947A

4

to the sending state" "[a]t the earliest practicable time," the brief retention in this case was "consonant with the purposes of this agreement." *Id.* The IAD's purpose to "encourage the expeditious and orderly disposition" of Price's charges would be thwarted if Price were required to be sent back to California immediately after the first indictment was dismissed, as he would have been required to be sent back to Nevada on the new indictment. *See* NRS 178.620, art. I.

We therefore conclude that the district court did not err by declining to send Price back to California or by ordering Price to be remanded on the new indictment warrant. For this reason, it was also not improper for the prosecutor to issue a subpoena to Price in jail to testify at the grand jury proceedings.

*There was good cause for the continuance of trial from January 31, 2013, to May 20, 2013*

After oral argument failed to clarify the record, we ordered a limited remand for the district court to determine whether the continuance from January 31, 2013, to May 20, 2013, was a necessary and reasonable continuance for good cause under the IAD or should be counted against the State. *Price v. State*, Docket No. 64281 (Order of Limited Remand, May 10, 2016). The district court held evidentiary hearings on October 24, 2016, and November 7, 2016. Following the hearings, the parties submitted briefs to the district court and, on April 6, 2017, the district court entered its findings of facts and conclusions of law and order finding good cause supported the continuance. After the decision, Price moved for reconsideration based on his discovery of a video recording of the preliminary portion of the January 31, 2013 hearing, which the district court denied. As a result of the hearing, the district court clarified its previously filed findings of fact and conclusions of law, to read that "[t]he

only reasonable and necessary reason th[e] [district] [c]ourt can find from the record for setting the trial on May 20, 2013, was that there was a general civil stack prior to the May 20, 2013 date." The district court also reaffirmed its finding that "there were reasonable and necessary grounds constituting good cause for a trial setting beyond February 11, and 25, 2013."

In his supplemental brief to this court on this issue, Price argues that the State failed to meet its burden of demonstrating good cause for the continuance from January 31, 2013 to May 20, 2013, and that the delay associated with this continuance, combined with the other State-caused delays in the prosecution, violated the IAD and require dismissal of the charges. Price contends that neither prosecutor "had a good faith belief that accommodations could not be made" in the prosecutors' other trials pending in February of 2013. The State disagrees. It contends that the district court properly took a variety of factors into consideration in delaying the trial until May 20, 2013, and that the subpoena issue was an added concern because "[h]ad the trial been set sooner, the [d]istrict [c]ourt would have found itself in the position of once again having to vacate another trial setting for [Price]."[6]

Pursuant to the IAD, "any necessary or reasonable continuance" may be granted where "good cause [is] shown in open court, the prisoner or the prisoner's counsel [is] present, [and] the court ha[s] jurisdiction of the matter." NRS 178.620, art. III(a), IV(c). The IAD does not define the term "good cause." *Brown v. Wolff*, 706 F.2d 902, 906 (9th

---

[6]As indicated in our order of limited remand, the dispositive question regarding the IAD timeline is whether there was good cause for the continuance from January 31, 2013, to May 20, 2013. *Price v. State*, Docket No. 64281 (Order of Limited Remand, May 10, 2016). Thus, we limit our analysis to this portion of the parties' arguments.

Cir. 1983). Nevertheless, courts have deemed it to "mean[ ] a substantial reason; one that affords a legal excuse." *State ex rel. Hamett v. Knauff,* 764 P.2d 441, 443 (Idaho Ct. App. 1988). The burden is on the state to "produce evidence on the record that there was good cause to delay trial beyond the 180 days." *State v. McKenzie,* 596 S.W.2d 53, 59 (Mo. Ct. App. 1980); *see Wolff,* 706 F.2d at 906-07; *Haigler v. United States,* 531 A.2d 1236, 1246 (D.C. 1987). "While some unavoidable delays are to be expected to arise due to crowded dockets and the scheduling burdens of lawyers, the state must establish from the record a valid reason for the delay." *Knauff,* 764 P.2d at 444. Furthermore, "while a crowded trial court calendar may in some circumstances constitute good cause . . . it does not amount to per se good cause." *Felix v. United States,* 508 A.2d 101, 109 (D.C. 1986); *see also Wolff,* 706 F.2d at 906 n.8.

Here, the district court correctly found that the State met its burden. The transcript for the January 31, 2013, hearing reflects that the State had suggested that there was "no way [it] c[ould] get" its witnesses by February 11, 2013, and that the child murder case that was set for the week of February 25, 2013 had been set for a year. On limited remand, the district court found, in part, that the trial was not set for February 11 because "there is virtually no serious felony case that can be subpoenaed and ready for trial in six business days," and that the February 25, 2013, trial date was also unreasonable due to the "complex evidentiary and legal issues" involved in both this case and prosecutor Stanton's murder case. In addition, the State points to the subpoena issue that Price raised at the January 31, 2013, hearing. The hearing transcript demonstrates that Price had issued a subpoena to Edelman's counsel to appear, or in the alternative, to disclose the substance of the information related to the present case that

Edelman gave in reaching a plea agreement.[7] The district court predicted objections to the subpoena and scheduled a hearing on the matter for February 19, 2013. It was after the exchange on the subpoena issue that the district court set the trial for May 20, 2013, which both prosecutor Clowers and Stanton had indicated was likely their earliest available date. Although Price contended that the date was "too far out," the district court stated, "[t]his case has been here for years and probably – I just hope it gets started on May 20th. That is a good date as far as I'm concerned."

In addition to the prosecutors' availability and the complex nature of the case, the record reflects that the district court was also concerned with the time resolving the subpoena issue would take. The district court's statements also demonstrate that it was taking into account the procedural history of this particular case. The district court's concerns proved prescient, as the subpoena issue was not resolved until March 28, 2013, but could have taken much longer.[8] In its findings of fact and

---

[7]Edelman had entered negotiations with the State and had agreed to testify against Price and plead guilty to a felony federal offense based on the incident in Primm, with the State foregoing its prosecution against her in return. As part of the plea negotiations, Edelman apparently made an oral proffer of her testimony. Edelman refused to submit to an interview by Price's counsel, and this court granted a writ petition preventing Price from obtaining a summary of Edelman's unrecorded oral proffer from the State. See State v. Eighth Judicial Dist. Court, Docket No. 62464 (Order Granting Petition, January 25, 2013).

[8]Litigation on the subpoena issue continued until March 28, 2013, which included a district court order, a petition for a writ of mandamus or prohibition, and an order granting the writ in part issued by this court. Notably, as demonstrated by the March 28, 2013, hearing, litigation on the issue could have continued. Upon being asked by the district court if Price wanted to file a second writ to clarify this court's order, Price's counsel indicated "no, no, no, Heaven's no. We're just going for the record to issue

conclusions of law on remand, the district court observed that Price's former counsel[9] "admitted [under cross-examination] that the Edelman subpoena issue overlapped with issues that caused the defense to request a continuance in the case in July of 2012," relating to Edelman's testimony at trial. The district court also found that Price's counsel "testified that the defense never told [the district court] or stated on the record that they would drop the subpoena issue for a quicker trial setting."

We agree with the district court that there was good cause for continuance of the trial until May 20, 2013. The record clearly reflects that the district court took a number of factors into consideration when setting the May 20, 2013, trial date, including the prosecutors' availability, the complex nature of the case, the outstanding subpoena issue, and the procedural history of the case.[10] Thus, the 180-day IAD period was tolled from January 31 to May 20, 2013.

*Price's conviction on Count 5 must be reversed*

Price contends that it was "legally impossible" for him to burglarize his own hotel because he had not been lawfully evicted from his hotel room, nor did he trespass or stay past the expiration of his rental

---

a subpoena, move to quash, and so be it. We don't want a continuance. We don't want anymore Supreme Court. We want a trial." Had Price chosen to file a subsequent writ petition, or the trial been set earlier, the district court very likely would have had to vacate another trial date. This would have been the sixth trial date vacated due to litigation.

[9]Casey Landis, Esq., represented Price at trial with Price's current counsel.

[10]Because we conclude that the continuance was for good cause, we need not address the State's additional arguments related to Price's alleged waiver of the IAD deadline.

period. Burglary laws "are aimed at the danger caused by the unauthorized entry" into "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building." *State v. White*, 130 Nev., Adv. Op. 56, 330 P.3d 482, 485 (2014) ("The laws are not intended necessarily to deter the trespass or the intended crimes, but are aimed at the danger caused by the unauthorized entry itself." (internal quotation marks omitted)); *see also* NRS 205.060. Burglary statutes such as NRS 205.060 "protect[ ] against intruders into indoor areas, not persons committing crimes in their own homes." *White*, 130 Nev., Adv. Op. 56, 330 P.3d at 485 (quoting *People v. Gauze*, 542 P.2d 1365, 1369 (Cal. 1975)). Thus, "a person with an absolute right to enter a structure cannot commit burglary of that structure." *Id.*

Here, Price was an occupant of the hotel room with a key to enter and the legal authority to do so. The right to enter a hotel room is not absolute, but neither is the right to enter one's home if there is a "legal impediment such as a TPO [or] a restraining order of some sort." *Id.* at 484. Because Price had the legal authority to enter the hotel room, we reverse the judgment of conviction on Count 5—burglary while in possession of a weapon. Doing so will not affect Price's sentence, as the district court ordered Count 5 to run concurrently with the other counts.

*The doctrine of law of this case prevents this court from revisiting whether Brady required disclosure of the substance of Edelman's oral proffer*

Price argues that this court's holding in its January 25, 2013, order granting the State's writ of mandamus—which challenged the district court's order that the State had to disclose the substance of Edelman's oral proffer—is limited to a holding that discovery statutes and rules do not compel disclosure of such material. Thus, Price argues, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny require the disclosure of a potential key

SUPREME COURT
OF
NEVADA

(O) 1947A

witness's inconsistent statements and that this court did not address this *Brady* argument. *Id.* "The law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same," and the doctrine of the law of the case "cannot be avoided by a more detailed and precisely focused argument subsequently made after reflection upon the previous proceedings." *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798 (1975

This court recognized the potential *Brady* problems when it ruled on the writ and Price cannot avoid that decision by attempting to present a more focused argument on this appeal. Price's answer to the State's writ argued the exculpatory nature of the proffer and that, as impeachment evidence, it is exculpatory under *Brady*. In addition, the State's petition discussed *United States v. Acosta*, 357 F. Supp. 2d 1228 (D. Nev. 2005), and *Rippo v. State*, 113 Nev. 1239, 946 P.2d 1017 (1997), at length. *Acosta* dealt with whether *Brady* required the government to disclose the actual proffers of informants and cooperating witnesses. 357 F. Supp. 2d at 1238-45. *Rippo* analyzed whether the State's failure to disclose two of its cooperating witnesses' testimony to the defense violated the *Brady* rule. 113 Nev. at 1256-58, 946 P.2d at 1028-29. Furthermore, this court's order granting the State's writ stated that "no controlling legal authority" required the State to disclose Edelman's proffer. *State v. Eighth Judicial Dist. Ct.* Docket No. 62464. Thus, Price's claim is barred by the doctrine of law of the case.

*The district court did not err in denying Price's request for a new jury panel*

Price argues that a new jury should have been impaneled—or a mistrial granted--because many potential jurors likely saw the court's bailiff approach Price, forcibly remove a pen from his hand, and drop a small pencil in front of him. We review this issue for an abuse of discretion. *See*

Supreme Court
OF
Nevada

(O) 1947A

*Rudin v. State*, 120 Nev. 121, 142, 86 P.3d 572, 586 (2004); *see also Pelfrey v. Commonwealth*, 842 S.W.2d 524, 526 (Ky. 1992). A district court abuses its discretion when its "decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

The record does not establish that the potential jurors who saw the incident were the actual jurors in this case. Price makes the conclusory statement that the incident sent the obvious message that the defendant was so dangerous he could not have a simple writing utensil, but does not show that any juror actually thought this. It is equally plausible that the potential jurors assumed that jail policy did not allow Price to have a pen. Therefore, we conclude that the trial court did not abuse its discretion by denying Price's motion for a mistrial. *See McKenna v. State*, 114 Nev. 1044, 1049, 968 P.2d 739, 742-43 (1998).

*The district court erred by allowing the testimony of Jessica Owens, but the error was harmless*

Jessica Owens worked for Round 'Em Up Coins, a company that buys, sells, and trades precious metals and coins. She testified to how private parties usually enter into transactions for gold and silver on the second-hand market. Significantly, she testified that it was common to advertise in Nifty Nickels,[11] to do these sorts of deals in hotels where there was security, and to carry a gun for protection. She also testified that it was typical for someone to bring transaction scales, a dolly, and acid to test the gold. Price argues that Owens' testimony was erroneously admitted because it was not proper habit evidence, it vouched for Wall, and the State did not designate Owens as an expert.

---

[11]Wall advertised in Nifty Nickel and Penny Savers.

SUPREME COURT
OF
NEVADA

(O) 1947A

The district court's determination on whether to admit or exclude evidence is reviewed for an abuse of discretion. *See Thomas v. Hardwick*, 126 Nev. 142, 150, 231 P.3d 1111, 1116-17 (2010). Owens' testimony did not constitute admissible habit evidence. *See* NRS 48.059.36; *Thomas*, 126 Nev. at 231 P.3d at 1117 (habit exists if "specific, recurring stimuli have produced the same specific response often and invariably enough to qualify as habit or routine") (citing 1 McCormick on Evid. § 195 (6th ed. 2006)). In addition, it may have strayed into expert rather than lay opinion testimony, *compare* NRS 50.265 *with* NRS 50.275, which is improper because Owens was not designated as an expert, *Perez v. State*, 129 Nev. 850, 863-64, 313 P.3d 862, 871 (2013) (setting forth factors for expert qualification). However, we find no vouching, as Owens failed to even mention Wall. *See Leonard v. State*, 117 Nev. 53, 74, n.14, 17 P.3d 397, 410, n.14 (2001). Further, evidentiary error is not constitutional error, meaning "we will reverse only if the error substantially affects the jury's verdict." *Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008). Here, Wall testified that he conducted these types of transactions in hotel rooms because of the security and privacy. Additionally, the jury was aware of Price and Wall's two previous transactions that had been conducted at a hotel with no problem. With or without Owens' testimony, the jury could have found it reasonable that Wall was armed but had no criminal intent, as the transaction involved a large sum of money and Wall loved guns. The Owens testimony did nothing to explain the bizarre behavior of Price and Edelman, who were supposedly acting in self-defense. Finally, without Owens' testimony it is likely that the jury would have still convicted Price because of the other witnesses' testimony that confirmed the majority of Wall's story. As such, the evidentiary errors associated with Owens'

SUPREME COURT
OF
NEVADA

(0) 1947A

13

testimony did not "substantially affect[ ] the jury's verdict." *Valdez*, 124 Nev. at 1189, 196 P.3d at 476.

*The district court did not allow improper testimony from Dr. Tess Naik outside the scope of her expert designation*

Price claims that the district court erred by allowing Dr. Tressa Naik's testimony regarding Wall's concussion because Dr. Naik did not diagnose Wall with a concussion when she treated him; therefore, Dr. Naik's statement that Wall likely developed a concussion amounted to speculation. A district court's decision to admit expert testimony is reviewed for an abuse of discretion and will not be overturned absent "clear abuse." *Morsicato v. Sav-On Drug Stores, Inc.*, 121 Nev. 153, 157, 111 P.3d 1112, 1115 (2005).

Dr. Naik testified within the scope of her expertise. The notice described Dr. Naik as a "medical expert" who would testify as to "the treatment of the victim in this case." Dr. Naik testified that "it was more than likely [Wall] had a concussion, based on the injuries I saw." Although Dr. Naik conceded on cross-examination that she did not conclusively diagnose Wall with a concussion, she suspected he had one, which was why he was referred to trauma to be evaluated. Because Dr. Naik was testifying regarding the diagnosis of an injury, and not what caused the injury, her testimony was proper. *See Morsicato*, 121 Nev. at 157, 111 P.3d at 1115 ("Not all medical expert testimony must be stated with a reasonable degree of medical probability."); *see also Fernandez v. Admirand*, 108 Nev. 963, 969, 843 P.2d 354, 358 (1992) (stating that experts are "generally given reasonably wide latitude in the opinions and conclusions he or she can state, being subject only to the general exercise of discretion by the district court concerning whether the expert is truly qualified to render such testimony.").

*The district court erred in addressing a jury question, but such error was harmless*



During jury deliberation, the jurors sent a question to the district court requesting a transcript of Wall's entire testimony. Without first consulting either counsel, the district court told the jury that the transcript would not be ready until the next day. The jury then withdrew its request. Price argues that the district court erred by failing to notify his counsel of the jury's request, and then compounded the error by failing to offer the jury the alternative of a read-back of the testimony in lieu of a transcript. This court has held that the district court errs when it communicates to the jury on a substantive matter before notifying counsel. *See Daniel v. State*, 119 Nev. 498, 511, 78 P.3d 890, 899 (2003). However, this error is subject to harmless error review. *See Cavanaugh v. State*, 102 Nev. 478, 484, 729 P.2d 481, 485 (1986). Errors of a non-constitutional nature, "will [be] reverse[d] only if the error substantially affects the jury's verdict." *Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008).

Although the district court erred by communicating to the jury without the presence of Price's counsel, *Daniel v. State*, 119 Nev. at 511, 78 P.3d at 899, the error did not substantially affect the jury's verdict. The record does not support Price's argument that the district court deprived the jury of the alternative of a read-back of the testimony. To the contrary, the record suggests that the jury did not want a read-back of the testimony. The record reflects the following colloquy between the district court and Price's counsel:

> Counsel: . . . the Court got a letter or a note from the jury asking for a read back or play back of Ronald Wall's testimony, and I think it was his complete testimony, correct me if I'm wrong . . .
>
> Court: Actually, if you read the note, they just wanted a copy of his transcript of his testimony.
>
> Counsel: Okay. I didn't know that.

SUPREME COURT
OF
NEVADA

(O) 1947A

15

> Court: What they were asking for was a copy of his actual transcript of his testimony when there wasn't a read back. They wanted to read his entire testimony.

In addition, the jury was informed that the transcript would arrive the next day, which was correct. The jury chose not to wait an additional day in order to receive the transcript. On these facts, reversible error does not appear. *See Lamb v. State*, 127 Nev. 26, 46, 251 P.3d 700, 713 (2011) (declining to find reversible error where the bailiff's improper statement to the jury in response to a jury question "that the judge was not available and the jury should read the instructions . . . did not introduce incorrect law into the proceedings" and thus that "there was no demonstrated likelihood or probability that that the improper . . . communication . . . impacted the jury's deliberations").

*The State did not commit prosecutorial misconduct*

Price makes several claims of prosecutorial misconduct. "When considering claims of prosecutorial misconduct, this court engages in a two-step analysis. First, we must determine whether the prosecutor's conduct was improper. Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008).

We conclude that the State did not commit prosecutorial misconduct in regard to Edelman. First, the State did not misrepresent that it was complying with the district court's July 30, 2012, order. On the contrary, the State disputed that it was required to provide Price with such information, and never represented that it was attempting to provide Price with the substance of Edelman's proffer. The State could have filed a writ petition challenging the district court's July 2012 order earlier than January 2013. However, there is no "specific time limit delineating when a

 

petition for a writ of mandamus must be filed." *Widdis v. Second Judicial Dist. Court*, 114 Nev. 1224, 1228, 968 P.2d 1165, 1167 (1998).

Second, the State did not misrepresent the benefit that Edelman would receive for her cooperation. In a July 25, 2012, letter from the State to Price, the State wrote, "it is expected that [Edelman's] plea will be to a crime of violence and depending on the Federal Governments sentencing guidelines that she will receive not less than a term of 135-168 month[s]." The next day, the State sent Price a second letter stating that the "exact negotiations with Victoria Edelman are not finalized." Price presents no evidence that the State made its July 25, 2012, representation in bad faith. Furthermore, any deal Edelman ultimately received was pursuant to negotiations with the federal government, and Price fails to demonstrate that the State knew about the ultimate deal Edelman received.

Third, there was no misconduct related to Frank Eggers's testimony. Notably, Price agreed to the "sanitized version" of the nature of Price's transaction with Eggers and suggested that he would object unless the transaction was characterized as "a lawful transaction and lawful debt." Price argues that he did not have an opportunity to clarify the transaction, but doing so would have led to Price opening the door to an area that he had sought to avoid in the first place. Additionally, the comments were proper, as the State was merely responding to an argument Price made in closing and did not bring up any facts related to how Eggers met Price or what Eggers does for a living. *See Thomas v. State*, 122 Nev. 1361, 1368-69, 148 P.3d 727, 732-33 (2006).

Fourth, there was no misconduct relating to the State's burden of proof and reasonable doubt. Price claims that the State committed prosecutorial misconduct "by shouting 'who cares' about the deficiencies in

SUPREME COURT
OF
NEVADA



(O) 1947A

the State's case" and by commenting on the reasonable doubt standard. Prosecutorial misconduct exists if a "prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004). This court does not view the statements in isolation, but considers the context within which the prosecutor made the statements. *Id.* Here, the prosecutor's comments were proper when viewed in proper context. In each instance that the prosecutor stated "who cares," the prosecutor was merely asserting that the contention made by Price was irrelevant. As an example, the State rebutted Price's argument that Wall, aka, the Duke never committed to the fact that he stored the money in Crown Royal bags. The prosecutor responded, "The Crown Royal bag, the big, big issue is [the] first time the duke ever mentioning the Crown Royal bag was two years later, [or] however long it was later. *Who cares* if it's packed and in a Crown Royal bag? . . . *Who cares* [whether] it's in the Crown Royal bag [when] he had [the] $10,000?" By stating "who cares" in this context, the prosecutor was merely arguing that whether the money was in Crown Royal bags was irrelevant because other evidence establishes that the crime occurred. Additionally, the prosecutor's comment that "reasonable doubt is a burden that is met every day in courtrooms around the United States by prosecutors" was not an improper comment because the State was not explaining, supplementing, or providing analogies to the standard of proof. Further, the written jury instruction on this issue stated the correct burden of proof. *See Evans v. State*, 117 Nev. 609, 631-32, 28 P.3d 498, 514 (2001) *overruled on other grounds by Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 732 n.5 (2015), *cert. denied* —— U.S. ——, 136 S. Ct. 2019 (2016) (holding that an

Supreme Court
OF
Nevada

(O) 1947A

18

error may be harmless "if the jury received the proper written instruction on reasonable doubt.").

Because we conclude that there was no prosecutorial misconduct, we need not reach the issue of whether the alleged misconduct warrants reversal. *See Valdez v. State*, 124 Nev. at 1188, 196 P.3d at 476.

*Cumulative error does not warrant reversal*

Price argues cumulative error infected the proceedings and deprived him of a fair trial. [A]lthough individual errors may be harmless, "the cumulative effect of multiple errors may deprive a defendant of the constitutional right to a fair trial." *Pertgen v. State*, 110 Nev. 554, 566, 875 P.2d 361, 368 (1994), *abrogated by Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001). If cumulative error prevents the defendant from receiving a fair trial, his conviction must be reversed. *See Big Pond v. State*, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985). When evaluating a claim for cumulative error this court considers "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Valdez*, 124 Nev. at 1195, 196 P.3d at 481.[12]

The issue of guilt was not close. Wall was a local celebrity, who has advertised himself as a gold seller and buyer for years, and was 59 years old at the time of the incident. Wall brought specific equipment to the room that was consistent with someone who wanted to buy gold and was carrying a lot of cash, further illustrating that he wanted to make a purchase from Price. In addition, many witnesses corroborated most of the important parts of Wall's story.

---

[12]It is undisputed by the parties that the gravity of the crimes was high.

SUPREME COURT
OF
NEVADA

(O) 1947A

19

The district court's errors were minor. Wall testified that he did these types of transactions in hotel rooms because of the security and privacy. The other witnesses' testimony largely confirmed Wall's story. More importantly, the jury was aware that Price and Wall met at a hotel room during two previous transaction. Further, without Owens' testimony, the jury still could have found it reasonable that Wall carried a gun but lacked criminal intent, as the transaction was for a lot of money and Wall loved guns. The second error was that the district court judge should have communicated with counsel before responding to the jury's request to be provided with the transcript of Wall's testimony. But, as discussed above, it does not appear the error impacted the deliberations. Given the weight of the evidence against Price, these errors were minor. We therefore conclude that the verdict would be the same in the absence of these errors.

Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART.



_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. Jennifer P. Togliatti, District Judge
Hon. James Bixler, District Judge
Coyer Law Office
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk